UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-CV-61436-Cohn/Seltzer

TARA PRODUCTIONS, INC.,
a Florida Corporation,

      Plaintiff,

v.

HOLLYWOOD GADGETS, INC.,
a Nevada Corporation, XACTA
3000 INC., d/b/a KINOKI DETOX,
a New Jersey Corporation, XACTA
3000, INC., a New Jersey Corporation,
CHESED DIRECT HOLDINGS
LIMITED, a Malta Company,
CHAIM "MARK" BESS, individually,
and JUDA LEVIN, individually,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**THIS CAUSE** is before the Court on the Motion to Dismiss [DE 53] filed by

Defendants Chaim "Mark" Bess and Chesed Direct Holdings Limited ("Chesed") (Mr.

Bess and Chesed are collectively referred to as "Movants").  The Court has carefully

considered the Motion, Plaintiff's Response [DE 65], Movants' Reply [DE 73], the record

in this case and is otherwise advised in the premises.

### I.  BACKGROUND

**A.**   **Plaintiff's Claims**

Plaintiff's Amended Complaint [DE 44] ("Complaint" or "Compl.") was filed on

December 3, 2009.  The Defendants include the Movants, Hollywood Gadgets, Inc.,

Xacta 3000 Inc. d/b/a Kinoki Detox, Xacta 3000, Inc. and Juda Levin.[1]  The Complaint contains eleven counts arising out of the contractual arrangements and allegations discussed below.  Plaintiff's claims include breach of agreement implied in law, breach of agreement implied in fact, civil conspiracy, fraud, fraud in the inducement, alter ego, negligent misrepresentation and other equitable remedies.

**B.    The Agreements**

**1.  Infomercial Production Agreement**

In March 2007, Plaintiff entered into an Infomercial Production Agreement with Hollywood Skin Concepts, Inc. ("Hollywood Skin").  See DE 44-1 ("Production Agreement").  The Production Agreement provided for the production of commercials for a foot pad product.  In addition to production costs, the Production Agreement provided that Hollywood Skin would pay Plaintiff a two percent royalty payment from the sales of the foot pad product.  Id. ¶ 6.  Hollywood Skin agreed to pay the royalties from sums received from third party distributors and agreed, alternatively, to "see that the third party distributor assumes the obligation of Client to make payments directly to Producer, provided that any such assumption by a third party shall not relieve Client of its payment obligations hereunder."  Id. ¶ 6(c).

**2.  Product License Agreement**

On or about November 14, 2007, pursuant to a Product License Agreement, Levin, Xacta 3000, Inc., Kinoki USA, Inc., Hollywood Gadgets, Inc. and Hollywood Skin (collectively defined in the agreement as the "Inventor") granted Chesed an exclusive

---

[1]      Hollywood Skin Concepts, Inc., the party to the Production Agreement (herein defined), was not named as a Defendant in this action.

2

worldwide right and license to the foot pad product.  <u>See</u> DE 73-2  ("License

Agreement").  The License Agreement states that "Inventor has caused to be produced

a short form commercial of approximately 2 minutes in length (the 'Inventor's

Commercial') promoting the Product and has available video and/or file footage shot in

connection therewith (whether or not used in the Inventor's Commercial, 'Footage')."  <u>Id.</u>

at 1.

The License Agreement granted Chesed all rights to the "Inventor's Commercial

and Footage" and further provided that "Inventor shall remain liable to pay the royalties

or other compensation, if any, due to the Talent, producer or any party in connection

therewith or otherwise in connection with the Product when such Talent and/or any

portion of the Inventor's Commercial or other Footage is utilized by Company."  <u>Id.</u> §

3(b)(i).  In addition, the License Agreement stated as follows:

> Inventor represents and warrants that it shall be responsible for the payment of
> all royalties, costs, fees or other amounts of any nature payable to any third
> parties with respect to the use of the Marketing Materials, airing of the Inventor's
> Commercial or use of any other Footage, including any sales of the Product
> resulting therefrom.

<u>Id.</u> § 13(j).

## C.    <u>Relevant Allegations</u>

Plaintiff alleges that "DEFENDANTS, by and through JUDA LEVIN, entered into

a written and oral Agreement or Agreement Implied in fact or at law" whereby the

Plaintiff agreed to write and produce a television commercial.  DE 44 ¶ 19.  In return,

Plaintiff was to receive a production budget fee plus a two percent share of "the actual

cash collections" from all sales of the product featured in the commercial.  <u>Id.</u> ¶ 20.

Plaintiff further alleges that "Defendants LEVIN, CHESED, and BESS, via numerous

3

emails, telephone calls and additional electronic means entered into, either directly or through ratifying behavior, this Oral Agreement or Agreement Implied in Fact or Quasi-Contract with the Plaintiff and in fact, performed the Agreement under those companies and even partially paid Plaintiff . . . ." <u>Id.</u> ¶ 21.

The Complaint states that "the services of producing the Commercial were performed by Plaintiff at the request of DEFENDANTS" and that all "DEFENDANTS were well aware and fully understood" the terms of compensation expected by Plaintiff. <u>Id.</u> ¶ 23.  Notwithstanding, "BESS and LEVIN, individually and through CHESED and XACTA 3000, Inc., as well as several other sham entities, have refused to pay Royalty payments due and owing to Plaintiff . . . ." <u>Id.</u> ¶ 25.  "Further, Defendants BESS and LEVIN, in a concerted action to accomplish avoiding the obligation to pay Plaintiff royalties, acted together in concert to carry out this over act willfully, negligently, maliciously and acting with full intent to defraud Plaintiff by playing the shell game and failing, and refusing to pay, to the Plaintiff the obligatory Royalties on the sale of the" product.  <u>Id.</u> ¶ 26.

In addition, Plaintiff alleges that "Defendants BESS and LEVIN have conspired together to defraud the Plaintiff of monies due for Royalties under the sale of the product by using the 'shell game' to confuse and convolute the proper responsible party for the obligations under the Agreement."  <u>Id.</u> ¶ 28.  According to Plaintiff, "[t]his has been accomplished by incorporating one undercapitalized party and asset-deficient entity under which to execute the Agreement, and several other wholly owned affiliate entities, equally asset-less, under which to partially perform portions of the Agreement . . . in order to confuse and convolute the proper party responsible for performance."  <u>Id.</u>

4

As a result, Defendants Chesed and Bess have allegedly "abscond[ed] with a substantial share of the total sales or revenues" from the product, revenues generated, in part, by the commercial produced by Plaintiff.  Id.

In support of her claims against Movants, Plaintiff relies on two sets of email excerpts and wire statements which purportedly show that Chesed made partial payments for the production of the commercial.  The Complaint quotes sentences from various emails between the parties.  Following these quotes, the Complaint then alleges what the Plaintiff believes those statements to mean.  The Complaint does not attach the complete emails.

According to the Complaint, the first set of excerpts demonstrate "obvious ratification and furtherance of the Agreement to produce the Commercial for the KINOKI FOOT PAD."  Compl. ¶ 22.  The excerpts involve Defendants Bess and Levin reviewing versions of the commercial and discussing changes.  See id. ¶¶ 22(a)-22(i).  For example, in one email, Defendant Bess writes to Tara Borakos, president of Plaintiff:  "This is way too much for me.  It looks risky.  I was thinking more in the $100K range would be worthwhile."  Id. ¶ 22(b).  The Complaint explains that "Defendant BESS is directing Plaintiff on how much to spend on the KINOKI FOOT PAD Commercial . . . ."  Id.  In another email, Ms. Borakos writes the following to Bess:  "Dear Mark:  Please review the attached estimate for the five day KINOKI shoot."  Id. 22(e).  The Complaint states that "Plaintiff is requesting approvals on the KINOKI Shoot from Defendant Bess . . . ."  Id.

The second set of email excerpts address the royalty payments.  Id. ¶ 50.  By way of example, on April 9, 2008, Defendant Bess allegedly wrote to Ms. Borakos that

"I want to work on royalties."  Id. ¶ 50(a).  The Complaint alleges that Defendant Bess "is stating to Plaintiff that he is aware of the Royalties, and also aware that they are not being paid pursuant to the KINOKI FOOT PAD Commercial."  Id.  Further, Defendant Bess allegedly sent an email to Ms. Borakos on August 29, 2008 stating the following: "Xacta owes you royalties for all KINOKI sales.  You asked me if we can pay it on behalf of them from the monies that we owe to them.  I said that is no problem with me if they agree."  Id. ¶ 50(d).  The Complaint alleges that "Defendant BESS [ ] states that he will pay the Royalties if LEVIN agrees, showing further conspiracy to defraud Plaintiff since BESS is well aware that no Royalties are going to be paid to LEVIN."  Id.

The Complaint also attaches documentation showing that Chesed made payments to Plaintiff.  See Exhibit B to Compl.  The Complaint alleges that these were either payments for "the initial production fees" for the commercial or the "initial Royalties . . . ."  Compl. ¶ 58.[2]

**D.    The Instant Motion**

Movants both argue that the Complaint should be dismissed for failure to state a cause of action under Rule 12(b)(6).  Movants assert that they are not liable for the royalty payments under the Production Agreement because they are not parties to this agreement and Movants never agreed to pay the royalty payments.  Absent any

---

[2]    The Motion to Dismiss argues that "the attachment that Plaintiff offers as 'proof' that Chesed partially paid for [Plaintiff's] services is blatantly misrepresented. The wire statement is actually proof of payment for a prior commercial [Plaintiff] did for Chesed unrelated to the Foot Pad."  DE 53 at 17-18.  A motion to dismiss is not the proper context to decide this issue.  The parties are advised, however, that any knowing attempt to mislead the Court will subject the offending party and its counsel to sanctions.

agreement, Movants argue that Plaintiff fails to state a cause of action for breach of contract, civil conspiracy, and the related equitable remedies.  Movants also argue that they did not make representations that they would pay the royalty payments and, therefore, the Complaint fails to state viable claims for fraud, fraud in the inducement and negligent misrepresentation.

In addition, Bess moves to dismiss the Complaint for lack of personal jurisdiction under Rule 12(b)(2).  Bess argues that this Court lacks personal jurisdiction under Florida's long arm statute because he does not operate or carry on a business in Florida, has not committed a tort in Florida and has not caused any injury to Plaintiff or Plaintiff's property within Florida.

## II.  ANALYSIS

### A.    <u>Failure to State a Claim</u>

As discussed below, Plaintiff's allegations present viable claims.  The Complaint, however, is difficult to follow and includes causes of action that must be dismissed and several that must be re-pled.  The Complaint is akin to a "shotgun pleading," about which the Eleventh Circuit has said the following:

> Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.

<u>Anderson v. District Board of Trustees of Central Florida Community College</u>, 77 F.3d 364, 366-67 (11th Cir. 1996).  Essentially, Plaintiff complains that it produced a commercial for which it did not receive adequate compensation, and Mr. Bess and Mr. Levin were unjustly enriched as a result.  Notwithstanding, Plaintiff asserts eleven

separate counts in the Complaint.  Although Plaintiff may assert as many claims as it sees fit, it must plead each claim with sufficient clarity and precision.

### 1.  Legal Standard

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citations omitted).

At this stage in the litigation, the Court must consider the allegations in the Complaint as true, and accept all reasonable inferences therefrom.  Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  The Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

## 2.  Counts I and XI – Quasi-Contract and Unjust Enrichment

"A contract implied in law, or 'quasi-contract,' operates when there is no contract 'to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation.'" Ocean Commc'ns, Inc. v. Bubeck, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 4th Dist. 2007) (quoting Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., 695 So. 2d 383, 386 (Fla. Dist. Ct. App. 4th Dist. 1997)). "'A contract implied in law is a legal fiction, an obligation created by the law without regard to the parties' expression of assent by their words or conduct.'" Am. Honda Motor Co. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (quoting Commerce P'ship, 695 So. 2d at 386); see also Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 805 (11th Cir. 1999) ("Although the parties may have never by word or deed indicated in any way that there was any agreement between them, the law will, in essence, 'create' an agreement in situations where it is deemed unjust for one party to have received a benefit without having to pay compensation for it.").

To prevail on a quasi-contract theory, a plaintiff must show that: (1) plaintiff conferred a benefit on the defendant; (2) defendant has knowledge of the benefit; (3) defendant voluntarily accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for defendant to retain the benefit without paying fair value to plaintiff.  Hull & Co., Inc. v. Thomas, 834 So. 2d 904, 907 (Fla. Dist. Ct. App. 4th Dist. 2003).  Likewise, the elements of a claim for unjust enrichment track these same four elements.  See, e.g., Della Ratta v. Della Ratta, 927 So. 2d 1055, 1059 (Fla. Dist. Ct. App. 4th Dist. 2006); Circle Fin. Co. v. Peacock, 399

9

So. 2d 81, 84 (Fla. Dist. Ct. App. 1st Dist. 1981) ("[T]he doctrine [of unjust enrichment] is a recognition that a person is accountable to another on the ground that if the former were not required to do so, he would unjustly benefit, or the other would unjustly suffer loss.").

The Complaint alleges that Plaintiff produced a commercial which Defendants Bess and Chesed accepted and used "repeatedly in advertising campaigns, resulting in multi-millions of dollars in revenues for DEFENDANTS." Compl. ¶ 36. Plaintiff further alleges that Bess and Chesed were aware that Plaintiff was responsible for producing the commercial. To support this allegation, the Complaint quotes from email communications between Bess and Ms. Borakos, wherein the two discuss the production of the commercial.

Movants accurately contend that "these emails fail to show any agreement by Bess on behalf of Chesed to pay [Plaintiff] for the commercial." DE 53 at 14. Moreover, both the Production Agreement and the License Agreement state that Mr. Levin and his various corporate entities, rather than Movants, are responsible for remitting payment to Plaintiff. Nevertheless, what cannot be determined at this stage in the litigation is whether Movants compensated Levin for their use of the commercial. The Court finds that if the Movants paid Levin for use of the commercial, then Plaintiff's right to relief runs through Levin and Levin only. If, however, Movants failed to compensate Levin for their use of the commercial, thereby resulting in Levin's failure to compensate Plaintiff, the Court finds that it would be inequitable to allow Movants to reap the benefits of a commercial which they accepted and did not pay for. Accordingly, the Court finds that Count I (breach of quasi-contract) and Count XI (unjust enrichment) survive the Motion to Dismiss.

### 3.  Count II – Breach of Contract Implied in Fact

Under Florida law, "a contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words."  Commerce P'ship, 695 So.2d at 385. "The enforceability of this obligation turns on the implied promise, not on whether the defendant has received something of value.  A contract implied in fact can be enforced even where a defendant has received nothing of value."  Id. at 387.  "In these contracts, the parties have in fact entered into an agreement but without sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement."  Tooltrend, Inc., 198 F.3d at 806.

The Complaint alleges that immediately following the execution of the Production Agreement, "Defendants assumed all responsibility and performed under the provisions of the Agreement interchangeably by directing, approving, ratifying and submitting partial payments pursuant to the Agreement to produce the Commercial."  DE 44 ¶ 41. The Production Agreement was entered into on or about March 7, 2007.  Defendants Chesed and Bess were not parties to the Production Agreement.  Plaintiff, however, claims that Defendants Chesed and Bess breached a contract implied in fact amongst Plaintiff and these Defendants because (1) Plaintiff produced the commercial which Defendants Chesed and Bess used; (2) Defendant Bess's knowledge and involvement in the production of the commercial is demonstrated by emails sent between Bess and Ms. Borakos, see Compl. ¶¶ 22, 50; (3) Chesed made partial payments to Plaintiff for the production and use of the commercial, see Exhibit B to Compl; and (4) Defendants Chesed and Bess have failed to "pay all of the Royalties owed to Plaintiff . . . ."  Compl.

11

¶ 45.  The Court finds that, at this stage, the foregoing allegations are sufficient to state a claim for breach of an implied contract.

Movants argue that Plaintiff cannot state a claim based on a contract implied in fact because to do so would violate Florida's statute of frauds.  <u>See</u> DE 53 at 16-17. Movants base their arguments on two separate Florida statutes.

First, Movants rely on Fla. Stat. § 672.201, which states that

> a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker.

Fla. Stat. § 672.201(1).[3]  The statute, however, goes on to state the following:

> (3) A contract which does not satisfy the requirements of [the above section] but which is valid in other respects is enforceable:

> (a) If the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

> . . .

> (c) With respect to goods for which payment has been made and accepted or which have been received and accepted . . . .

---

[3]      It is debatable whether the production of a commercial qualifies as a sale of "goods," which is defined to mean "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (chapter 678) and things in action."  Fla. Stat. § 672.105; <u>see also</u> <u>In re DAK Industries, Inc.</u>, 66 F.3d 1091, 1093 (9th Cir. 1995) (drawing a distinction between "payments on a sale of goods" and "royalty payments for the continuing use of an intellectual property").  The Court need not reach this question for the reasons discussed above.

Fla. Stat. § 672.201(3)(a) & (3)(c).  Both of these exceptions apply.  The commercial was produced for a specific product and cannot be sold to others.  In addition, the Complaint alleges that Defendants Chesed and Bess accepted and used the commercial and that Chesed made partial payments.

Second, Movants cite Fla. Stat. § 725.01, which provides, in pertinent part, as follows:

> No action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof, . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.

Fla. Stat. § 725.01.  Generally, an oral contract for an indefinite time is not barred by the statute.  Byam v. Klopcich, 454 So. 2d 720, 721 (Fla. Dist. Ct. App. 1984). "Only if a contract could not possibly be performed within one year would it fall within the statute." Id. at 721 (citations omitted).  For an agreement not reduced to writing to be unenforceable under Fla. Stat. § 725.01, "it must be apparent that it was the understanding of the parties that [the agreement] was not to be performed within a year from the time it was made."  Yates v. Ball, 181 So. 341, 344 (Fla. 1937).  Further, where "no definite time was fixed by the parties for the performance of their agreement and there is nothing in its terms to show that it could not be performed within a year according to its intent and the understanding of the parties, it should not be construed as being within the statute of frauds."  Id.

In other words, "[o]nly if a contract could not possibly be performed within one year would it fall within the statute."  Hesston Corp. v. Roche, 599 So. 2d 148, 152 (Fla.

13

Dist. Ct. App. 5th Dist. 1992).  Accordingly, "the result is that a promise to employ someone for five years, 3 two years, or even thirteen months, has to be in writing in order to be enforceable, but a promise to employ someone for their entire life does not." Id.  Yet the Eleventh Circuit has stated "that under Florida law the intent of the parties with regard to the time of performance (not the possibility of contingent termination) is the key factor in determining whether an oral agreement is enforceable." All Brand Importers, Inc. v. Tampa Crown Distributors, Inc., 864 F.2d 748, 750 (11th Cir. 1989) (citing Khawly v. Reboul, 488 So. 2d 856 (Fla. Dist. Ct. App. 3d Dist. 1986)).[4]

The Court finds that the contract implied in fact is indefinite regarding the time period for performance.  At the inception of the contract, it was possible that no sales of the foot pad product would occur beyond one year.  Alternatively, under the Eleventh Circuit's analysis in All Brand, the Court finds that the "intent of the parties" cannot be determined at the motion to dismiss stage.  Indeed, the case cited by Movants on this point involved a motion for summary judgment.  Marcus v. Garland, Samuel & Loeb, P.C., 441 F. Supp. 2d 1227, 1232 (S.D. Fla. 2006) (finding an oral agreement was intended to last for more than one year "[a]fter careful review of the record").

In addition, Movants argue that pursuant to Fla. Stat. § 725.01, any agreement "to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person" must be in writing.  Fla. Stat. § 725.01; see also DE 53 ("[A]n agreement to answer for the debts of another must also be in writing or it is

---

[4]     The party alleging unenforceability due to the statute of frauds has the burden of establishing this defense.  Spanziani v. Bancroft, 618 So. 2d 744, 746 (Fla. Dist. Ct. App. 1993).

violative of the Statute of Frauds.").  Here, Plaintiff is arguing that Movants' conduct created a contract implied in fact whereby the Movants, themselves, had an obligation to pay the Plaintiff.

Finally, Movants argue that "Plaintiff cannot seek a remedy for quasi-contract (Count I) while simultaneously asserting the existence of an oral contract (Count II)." DE 53 at 16.  This argument, however, ignores a basic tenet of alternative and inconsistent pleading recognized in Fed. R. Civ. P. 8(d).  See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1273-74 (11th Cir. 2009).  "While Plaintiff can only recover once for the same actual damages, regardless of the number of alternative theories presented, he is not barred against pleading unjust enrichment simply because he has also pled breach of contract . . . ."  Brueggemann v. NCOA Select, Inc., No. 08-80606-CIV-KAM, 2009 WL 1873651, *7 (S.D. Fla. June 30, 2009); see also Mancini Enterprises, Inc. v. American Express Co., 236 F.R.D. 695 (S.D. Fla. 2006). Accordingly, the Court denies Movants' Motion to Dismiss Count II (breach of contract implied in fact) of the Complaint.

### 4.  Count III – Civil Conspiracy

To state a claim for conspiracy, a plaintiff must allege (1) an agreement among two or more parties, (2) the doing of an unlawful act or lawful act by unlawful means, (3) the doing of some overt act in furtherance of the conspiracy, and (4) damage sustained by the plaintiff as a result of the conspiracy.  United Techs. Corp., 556 F.3d at 1271 (citing Charles v. Florida Foreclosure Placement Center, LLC, 988 So. 2d 1157 (Fla. Dist. Ct. App. 3d Dist. 2008)).  Movants argue that Plaintiff has failed to adequately plead a claim for civil conspiracy because there was no agreement between Movants

15

and Plaintiff to pay royalties and Movants are not related or otherwise affiliated with Hollywood Skin or any of the other Defendant entities.  DE 54 at 18-20.

Florida courts recognize a civil conspiracy as an independent tort under certain circumstances.  Wilcox v. Stout, 637 So. 2d 335, 336 (Fla. Dist. Ct. App. 2d Dist. 1994).  "[O]rdinarily there can be no independent tort for conspiracy.  However, if the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent tort."  Churruca v. Miami Jai-Alai, Inc., 353 So. 2d 547, 550 (Fla. 1977).

The Complaint in this case satisfies the standard articulated in Churruca.  Here, Plaintiff alleges that Defendants Bess and Levin agreed to use their "shell entities" to "deliberately induce Plaintiff to produce [the commercial] and then to not pay the Plaintiff Royalties for services rendered."  Compl. ¶ 48.  Plaintiff further alleges that Defendants Bess and Levin used "numerous and different shell entities to partially perform the obligations of the Agreement with Plaintiff in order to confuse and convolute the issue of liability."  Id. ¶ 51.  The alleged scheme, therefore, was dependent on the use of multiple individuals and/or entities and Count III (civil conspiracy) survives the Motion to Dismiss.

### 5.  Counts IV and V – Fraud and Fraud in the Inducement

Movants argue that the fraud claims are not pled with the requisite particularity in accordance with Rule 9(b).  The Court agrees.  Rule 9(b) provides that claims of fraud must be pled "with particularity."  Fed. R. Civ. P. 9(b).  Rule 9(b) is satisfied if a complaint sets forth:

16

(1)    precisely what statements were made in what documents or oral representations or what omissions were made;

(2)    the time and place of each statement and the person responsible for making (or, in the case of omissions, not making) same;

(3)    the content of such statements and the manner in which they misled the plaintiff; and

(4)    what defendants obtained as a consequence of the fraud.

AXA Equitable Life Ins. Co. v. Infinity Financial Group, LLC, 608 F. Supp. 2d 1349, 1357 (S.D. Fla. 2009).

First, the Complaint generally alleges that multiple Defendants made false representations.  See, e.g., Compl. ¶ 61.  Plaintiff must state with particularity what statements were made by each Defendant and when such statements were made.  Second, although Fed. R. Civ. P. 9(b) does not require specific dates and times of all alleged misrepresentations, the Complaint fails to state with particularity the time frame of the alleged fraudulent behavior and representations.  As a result, it is not clear whether Plaintiff is arguing that the alleged fraud caused Plaintiff to enter into the Production Agreement or whether the fraud commenced after the Production Agreement was executed.[5]  Accordingly, the Court grants Movants' Motion to Dismiss with respect to Count IV (fraud) and Count V (fraud in the inducement).

**6.  Count VI – Alter Ego**

The Complaint brings a claim for "Alter Ego Amended as Against Bess and Chesed."  See Com pl.  ¶¶ 66-70.  Alter ego is not a separate cause of action for which

---

[5]    For example, the email excerpts contained in the Complaint postdate the execution of the Production Agreement, suggesting that the allegedly fraudulent behavior Plaintiff relies on to state her claim occurred after the execution of the Production Agreement.  The Complaint, however, alleges in Count V (fraud in the inducement) that Plaintiff was induced to "rely upon such representations and act upon it by entering into the Agreement for the services subsequently performed by Plaintiff."  Compl. ¶ 62.

relief can be granted; rather, in this case, alter ego serves as a theory to impose liability on an individual for the acts of a corporate entity.  See Acadia Partners, L.P. v. Tompkins, 759 So. 2d 732, 740 (Fla. Dist. Ct. App. 5th Dist. 2000).  Therefore, the Court dismisses Count VI (alter ego) with prejudice.  Plaintiff must instead plead allegations regarding alter ego in the body of its Complaint and then identify, under each relevant count, which specific Defendant is being charged on the theory of piercing the corporate veil.

### 7.  Count VII – Negligent Misrepresentation

In order to state a claim for negligent misrepresentation, a plaintiff must allege the following: (1) a defendant made a misrepresentation of material fact; (2) that the defendant either knew or should have known was false or made without knowledge of truth or falsity; (3) the defendant intended to induce another to act on the misrepresentation; and (4) resulting injury to a party acting in justifiable reliance on the misrepresentation.  Meterlogic v. Copier Solutions, Inc., 126 F. Supp. 2d 1346, 1363 (S.D. Fla. 2000); Hoon v. Pate Constr. Co., 607 So. 2d 423, 427 (Fla. Dist. Ct. App. 4th Dist. 1992).  Plaintiff's negligent misrepresentation claim suffers from similar problems as the fraud claims.  That is, Plaintiff groups together multiple Defendants, does not specify which representations were made by which Defendant, and it is unclear what "Agreement" Plaintiff entered into as a result.  Compl. ¶ 74 (stating that the purpose of the alleged misrepresentations was to induce Plaintiff to enter "into the Agreement").  Accordingly, the Court dismisses Count VII (negligent misrepresentation) without prejudice.

### 8. Count VIII – Open Account

Under Florida law, an open account has been defined as an "unsettled debt arising from items of work and labor, goods sold and delivered with the expectation of further transactions subject to further settlement." Central Ins. Underwriters, Inc. v. National Ins. Finance Co., 599 So. 2d 1371, 1373 (Fla. Dist. Ct. App. 3d Dist. 1992).  A claim for open account has also been described as "an unsettled claim or demand by one person against another, based on a transaction creating a debtor and creditor relation between the parties." Cherokee Oil Co. v. Union Oil Co., 706 F. Supp. 826, 830 (M.D. Fla. 1989).  "In order to state a valid claim on an open account, the claimant must attach an 'itemized' copy of the account." H & H Design Builders v. Travelers' Indem. Co., 639 So. 2d 697, 700 (Fla. Dist. Ct. App. 5th Dist. 1994) (citing Moore v. Boyd, 62 So. 2d 427 (Fla.1952)); see also IDEARC Media LLC v. The Hamilton Group Management Co., Inc., No. 8:09-CV-2123-T-17TBM, 2010 WL 76975, at *2-3 (M.D. Fla. Jan. 7, 2010).  Plaintiff fails to attach an itemized copy of the alleged account, therefore, Count XIII (open account) will be dismissed without prejudice.

### 9. Count IX – Accounting

A party seeking an equitable accounting must allege: (1) the existence of a fiduciary relationship or a complex transaction; and (2) that a remedy at law is inadequate.  Kee v. Nat'l Reserve Life Ins. Co., 918 F.2d 1538, 1540 (11th Cir. 1990) (citing F. A. Chastain Constr., Inc. v. Pratt, 146 So. 2d 910, 913 (Fla. Dist. Ct. App. 3d Dist. 1962)).  The Court finds that Plaintiff's claim for Accounting is sufficient.  The Complaint alleges that it is necessary to "perform an accounting to ascertain Royalties due" to Plaintiff.  Compl.  ¶ 85.  Moreover, if Plaintiff prevails, the award may need to

account for future royalty payments.  Therefore, Count IX (accounting) survives the Motion to Dismiss.

### 10.  Count X – Equitable Lien

"In Florida, an equitable lien is an appropriate remedy to prevent unjust enrichment between family members or those with close personal relationships." Della Ratta v. Della Ratta, 927 So. 2d 1055, 1059 (Fla. Dist. Ct. App. 4th Dist. 2006); see also Palm Beach Sav. & Loan v. Fishbein, 619 So. 2d 267 (Fla. 1993).  One circumstance "justifying the imposition of an equitable lien exists 'when the claimant has furnished funds for the improvement of land with the knowledge and consent of the owner.'" Plotch v. Gregory, 463 So. 2d 432, 436 (Fla. Dist. Ct. App. 4th Dist. 1985) (quoting Wagner v. Roberts, 320 So. 2d 408, 410 (Fla. Dist. Ct. App. 2d Dist. 1975), cert. denied, 330 So. 2d 20 (Fla. 1976)).  "The basis of equitable liens may be estoppel or unjust enrichment."  Plotch v. Gregory, 463 So. 2d 432, 436 (Fla. Dist. Ct. App. 4th Dist. 1985).  The Court finds that an equitable lien is a remedy in connection with Plaintiff's claims for unjust enrichment and quasi-contract – not a separate cause of action.  Accordingly, Count X (equitable lien) will be dismissed without prejudice to Plaintiff's ability to replead as a prayer for relief.

### B.  Plaintiff Must Amend Complaint

The Complaint is styled as Amended Complaint as to Defendants Chaim Mark Bess and Chesed Direct Holdings Limited.  Plaintiff shall file a Second Amended Complaint as to all Defendants named in that amended complaint.  Further, in amending the Complaint, Plaintiff should refrain from using general terms such as "Agreement" or "Defendants" wherever possible.  Finally, if Plaintiff chooses to replead

the fraud claims, it must do so consistent with Section A.5 of this Order.

C.     **Personal Jurisdiction Standard**

A federal court may exercise jurisdiction over a nonresident defendant if: (1) personal jurisdiction is established under the state long-arm statute, and (2) minimum contacts exist so that the exercise of personal jurisdiction over the nonresident satisfies traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment.   Cable/Home Commc'n Corp. v. Network Productions, Inc., 902 F.2d 829, 855 (11th Cir. 1990).  This Court must apply the Florida long arm statute as it anticipates the Florida Supreme Court would.  Id. at 856.  Further, the Court must strictly construe the long arm statute.  Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626-627 (11th Cir. 1996).

"A plaintiff seeking to obtain jurisdiction over a nonresident defendant initially need only allege sufficient facts to make out a prima facie case of jurisdiction."  Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 (11th Cir. 1999).  The plaintiff bears the burden of proving "by affidavit the basis upon which jurisdiction may be obtained" only if the defendant challenging jurisdiction files "affidavits in support of his position."  Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989).  "The district court must accept the facts alleged in a complaint as true, to the extent that they are uncontroverted by a defendant's affidavits" and "where a plaintiff's complaint and a defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff."  Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

**1. Florida's Long Arm Statute**

Plaintiff alleges that personal jurisdiction exists over Bess pursuant to three

sections of Florida's long arm statute, which provide in relevant part:

> Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a)     Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> (b)     Committing a tortious act within this state.
>
>          . . .
>
> (f)     Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
>          1.     The defendant was engaged in solicitation or service activities within this state; or
>
>          2.     Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

i.  Carrying on a Business in Florida

For purposes of Fla. Stat. 48.193(1)(a), "'the activities of the [defendant] sought

to be served . . . must be considered collectively and show a general course of

business activity in the State for pecuniary benefit.'" Sculptchair, 94 F.3d at 627

(quoting Dinsmore v. Martin Blumenthal Associates, Inc., 314 So. 2d 561, 564 (Fla.

1975)).  "The fact that a foreign defendant contracts with a Florida resident is not

enough to establish personal jurisdiction over the foreign defendant." Wallack v.

Worldwide Machinery Sales, Inc., 278 F. Supp. 2d 1358, 1366 (M.D. Fla. 2003).

The Motion argues that Bess is not subject to Fla. Stat. 48.193(1)(a) because he "does not in fact engage in substantial, continuous and systematic business activity in Florida."  DE 53 at 9.  In support, Bess declares that he does "not regularly transact business in the state of Florida, either personally or in my business."  DE 53-3 ¶ 8 (Bess Affidavit).

It is undisputed that Bess is a resident of California, does not have an office in Florida and does not own real property or any other assets in Florida.  See DE 53-3. While it is also undisputed that Bess made telephonic and electronic communications from California into Florida, such communications alone cannot constitute "conducting business" in Florida for purposes of establishing personal jurisdiction under Fla. Stat. §48.193(1)(a).  Sculptchair, 94 at 628.

In response, Plaintiff submits the affidavit of Ms. Borakos which states that she had "regular and continuous business transactions with Chaim Mark Bess and Chesed Direct Holdings."  DE 65 ¶ 1 (Borakos Affidavit).  Ms. Borakos further states these transactions "have consistently involved the rendering of services in the state of Florida, the payment of said rendered services in the state of Florida, and the negotiation and entering into agreements for such services in the state of Florida."  Id. ¶ 2.  In addition, the Complaint identifies four separate transactions between Plaintiff (or New U, Inc., an entity for which Ms. Borakos also serves as president) and Chesed.  See Compl. ¶ 12.

The Motion to Dismiss argues that "[a]ll of Plaintiff's allegations against Bess individually stem out of his activities on behalf of Chesed.  The fact that Bess, at one time, was an officer of Chesed, which did transact business in the state of Florida is not

enough to confer personal jurisdiction upon Bess individually."  DE 53 at 9.  The Complaint, however, alleges that Chesed serves as a mere alter ego to Bess.  See Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd., 792 F. Supp. 1566, 1581 (S.D. Fla. 1992) ("If the Plaintiffs' assertions [regarding veil piercing] are true, it cannot be said that the Defendants would not reasonably expect to be haled into a Florida court.").  Although the Court acknowledges that Plaintiff must satisfy a heavy burden to successfully pierce the corporate veil, the Court finds that Plaintiff's allegations of alter ego are sufficient to survive a motion to dismiss.  Def. Control United States, Inc. v. Atlantis Consultants Ltd. Corp., 4 So. 3d 694 (Fla. Dist. Ct. App. 3d Dist. 2009) (find that defendant's personal jurisdiction arguments "fail because the alter ego, 'veil piercing,' and other predicates for liability are merits issues, not jurisdictional issues").  At the motion to dismiss stage, courts are reluctant to determine the fact intensive question of whether a corporate entity is merely an alter ego to protect an individual defendant from liability.  See West Coast Life Ins. Co. v. Ruth Secaul 2007-1 Ins. Trust, No. 09-81049-CIV-WPD, 2010 WL 27907, at *7 (S.D. Fla. Jan. 5, 2010) (refusing to dismiss claims against individual defendant where Plaintiff alleged that defendant "personally engaged in actions that were part of a fraudulent scheme to induce Plaintiff" to issue insurance policies that it would not have otherwise issued); Sunoptic Technologies, LLC v. Integra Luxtec, Inc., No. 3:08-cv-878-J-16JRK, 2009 WL 722320, at *2 (M.D. Fla. Mar. 18, 2009) (refusing to dismiss breach of contract claim based on alter ego theory even though complaint was "poorly drafted" and "provid[ed] only the minimum facts permitted by pleading standards").  Therefore, Plaintiff has met its burden with respect to Bess under Section 48.193(1)(a) of Florida's long arm statute.

    ii.  <u>Commission of a Tortious Act in Florida</u>

For the purpose of  Fla. Stat. 48.193(1)(b), the defendant does not have to be physically present in Florida and a defendant can commit the tortious act based on telephonic, electronic, or written communications into Florida so long as the cause of action arises from those communications.  <u>Wendt v. Horowitz</u>, 822 So. 2d 1252, 1260 (Fla. 2002); <u>Internet Solutions Corp. v. Marshall</u>, 557 F.3d 1293, 1296 (11th Cir. 2009); <u>Sierra Equity</u>, 650 F.Supp.2d at 1222-23.

Plaintiff asserts tort claims against Bess for civil conspiracy (Count III), fraud (Count IV), fraud in the inducement (Count V) and negligent misrepresentation (Count VII).  Bess argues that all of his activities were within the scope of his authority as an officer and/or director of Chesed and therefore, cannot support personal jurisdiction under Fla Stat. §48.193(1)(b).  Contrary to Bess's argument, it is well established that "individual officers are personally liable for torts they commit even if those torts arise from acts performed within the scope of their employment."  <u>Exhibit Icons, LLC v. XP Cos., LLC</u>, 609 F. Supp. 2d 1282, 1299 (S.D. Fla. 2009).  In light of the Court's determination that the Complaint states a claim for conspiracy against Defendant Bess, the Court finds that Plaintiff also meets its burden to establish personal jurisdiction over Bess pursuant to Fla. Stat. § 48.193(1)(b).

Alternatively, personal jurisdiction is proper even if the alleged co-conspirator otherwise has no connection to Florida.  <u>AXA Equitable</u>, 608 F. Supp. 2d at 1354 (citing <u>Wilcox</u>, 637 So. 2d at 335).  Therefore, personal jurisdiction pursuant to Fla. Stat. 48.193(1)(b) may be obtained over Bess as a co-conspirator with Chesed, Levin and the other Levin entities.  The instant Motion does not challenge this Court's jurisdiction

over Chesed.  Florida courts have construed Fla. Stat. 48.193(1)(b) to reach all alleged participants in a civil conspiracy, provided one act in furtherance of the conspiracy is committed in Florida.

The Court's determination that Plaintiff has established personal jurisdiction over Bess under Florida's long arm statute is dependent on preliminary findings that Plaintiff sufficiently alleged that (1) Chesed was a mere alter ego for Bess, and (2) Bess engaged in a conspiracy resulting in damage to a Florida resident.  See Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1250 (11th Cir. 2000) (holding that a motion to dismiss a tort claim for lack of personal jurisdiction under Florida's  long arm statute does not require a full-scale inquiry into whether the defendant committed a tort).  If Defendant Bess obtains summary judgment on either the alter ego theory or the conspiracy claim, he may again raise the argument that this Court's lacks personal jurisdiction.

iii.  Injury to Person or Property in Florida

Under Fla. Stat. 48.193(1)(f), it is well established that economic injury without an allegation of personal injury or property injury cannot confer long-arm jurisdiction over a nonresident defendant.  Sculptchair, 94 F.3d at 629.  Plaintiff alleges that Bess is subject to Fla. Stat. 48.193(1)(f) because "DEFENDANTS have caused injury to Plaintiff within the state of Florida due to their fraudulent and tortious acts inside and outside the state of Florida" by his failure to pay royalties.  Compl. ¶ 16.  Bess argues that absent an allegation of personal injury or property damage, long-arm jurisdiction cannot be found under Fla. Stat. 48.193(1)(f).  DE 53 at 11.

Plaintiff has not alleged she has suffered any personal injury or injury to property

and relies solely on her economic injury of nonpayment of royalties.  Sculptchair, 94.

F.3d at 629.  Therefore, the Court concludes that Plaintiff has failed to establish that the

Court has personal jurisdiction over Bess pursuant to Fla. Stat. 48.193(1)(f).

**2.  Minimum Contacts**

In addition to satisfying the requirements of a state long arm statute, it must also

be shown that the minimum contacts of defendant with the forum state satisfies the

following criteria: (1) the contacts are related to the plaintiff's cause of action or have

given rise to it; (2) the contacts involve some purposeful availment of the privileges of

conducting activities within the forum, thereby invoking the benefits and protections of

its laws; and (3) the contacts within the forum state are such that a defendant should

reasonably anticipate being haled into court there.  Sculptchair, 94 F.3d at 631; Sierra

Equity Group Inc. v. White Oak Equity Partners, LLC, 650 F. Supp. 2d 1213, 1225 (S.D.

Fla. 2009).  The mere existence of a contract with a Florida resident alone does not

establish minimum contacts with Florida.  Burger King v. Rudzewicz, 471 U.S. 462, 479

(1985).  For due process purposes, intentional torts can support the exercise of

personal jurisdiction over a nonresident defendant who has no other contacts with the

forum.  Licciardello v. Lovelady, 544 F.3d 1280, 1285 (11th Cir. 2008); AXA Equitable,

608 F. Supp. 2d at 1355.  For the reasons discussed above, particularly the Court's

finding that the Complaint states a claim for conspiracy against Bess, the Court

determines that Bess has sufficient minimum contacts with the forum.

Next, it must then be determined whether the assertion of personal jurisdiction

comports with "fair play and substantial justice."  Sierra Equity, 650 F. Supp. 2d at 1226.

 A district court should consider the following factors in making this determination:

the burden on the defendant in defending the lawsuit; the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies.

Id. (quoting Burger King, 471 U.S. at 476).

Here, the Court finds that assertion of personal jurisdiction over Defendant Bess "comport[s] with fair play and substantial justice."  Id. (internal quotation marks omitted). Adjudicating this dispute against all parties in Florida will provide Plaintiff with convenient and effective relief and will serve judicial efficiency.  In addition, Bess has retained local counsel and technology such as the CM/ECF system will allow Bess to conduct many activities related to this litigation from his home state.  Further, Florida has a strong interest in adjudicating a dispute that involves a Florida corporation and a tort committed in Florida.  For these reasons, the Court finds that the requirements of reasonableness and fairness of asserting jurisdiction over Defendant Bess are met.

### III.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    Motion to Dismiss [DE 53] is **GRANTED in part and DENIED in part**.

    a.    Count IV (fraud), Count V (fraud in the inducement), Count VII (negligent misrepresentation), Count VIII (open account) and Count X (equitable lien) are **DISMISSED without prejudice**.

    b.    Count VI (alter ego) is **DISMISSED with prejudice**.

    c.    The Motion to Dismiss is **DENIED** with respect to Count I (breach of contract implied in law), Count II (breach on contract implied in fact), Count III (civil conspiracy), Count IX (accounting) and Count XI (unjust

enrichment).

    d.   The Motion to Dismiss is **DENIED** with respect to Defendant Bess's

         argument that this Court lacks personal jurisdiction over him.

2.      Plaintiff shall file a Second Amended Complaint, consistent with this

       Order, on or before **April 26, 2010**.

3.      Defendants Chesed and Bess shall file their Response to Plaintiff's

       Second Amended Complaint on or before **May 7, 2010**.

4.      The Joint Motion for Oral Argument on the Motion to Dismiss [DE 74] is

       **DENIED as moot**.

5.      The Agreed Motion to Extend Scheduling Order Deadlines [DE 75] is

       **DENIED without prejudice** to be refiled once the pleadings are closed.

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, on this 16th day of April, 2010.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF