**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**

**Case No.: 09-61436-CIV-COHN/SELTZER**

TARA PRODUCTIONS, INC.,

          Plaintiff,

v.

HOLLYWOOD GADGETS, INC., et al.

          Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO CHESED DIRECT HOLDINGS**
**LIMITED AND CHAIM "MARK" BESS'S MOTION FOR SANCTIONS AND**
**INCORPORATED MEMORANDUM OF LAW**

     Plaintiff, Tara Productions, Inc., hereby responds to Defendants, Chesed Direct Holdings Limited and Chaim "Mark" Bess's *Motion for Sanctions and Incorporated Memorandum of Law* [DE 100] (the "Motion") and states:

**Introduction**

     Chesed Direct Holdings Limited ("Chesed") and Chaim "Mark" Bess ("Bess") have a custom and course of business dealings with Tara Productions, Inc. ("Tara"). Specific to this case, both Chesed and Bess were intricately involved in a venture selling Kinoki Footpads with Tara and the other defendants and third parties. Consistent with their established course of dealing, Tara has sworn that Bess and Chesed assured payment of Tara's royalties. The record bears no evidence to contradict this assertion, let alone dispute it.

     Bess and Chesed's Motion should be denied because:

(1) Tara's claims are not objectively frivolous, considering the undisputed evidence in the record;

(2) The claims were supported by reasonable facts; and

(3) Prior counsel conducted a sufficient investigation and relied on the undisputed, sworn position of Tara.

## MEMORANDUM OF LAW

### A. Standard for imposition of sanctions under Fed. R. Civ. P. 11.

### 1. Defined types of sanctionable conduct.

Bess and Chesed properly state the three types of conduct that the Eleventh Circuit Court of Appeals identified that warrant the imposition of Rule 11 sanctions:

(1) when a party files a pleading that has no reasonable factual basis;

(2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and

(3) when the party files a pleading in bad faith for an improper purpose.[1]

The Motion only discussed two of these three prongs. First, Bess and Chesed contend that "Plaintiff's claims are not supported by a reasonable factual basis."[2] Later, Bess and Chesed

---

[1] *Pelletier v. Zweifel*, 921 F. 2d 1465, 1514 (11th Cir. 1991) (citing *United States v. Milam*, 855 F.2d 739, 742 (11th Cir.1988); *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987) (en banc)) (footnote omitted).

[2] DE 100 at 5. The corresponding language from Rule 11 on this prong is subpart (b)(3), which requires that a pleading "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…." (Lexis 2010).

contend that "Plaintiff has clearly filed this Complaint and supporting exhibits for an improper purpose…"[3]

Bess and Chesed do not argue that Tara's claims are based on legal theories that have no reasonable chance of success.

## 2.   Analysis of Rule 11 motions for imposition of sanctions.

In order to impose sanctions under Rule 11, this Court must first determine whether the subject claims are "objectively frivolous."[4]

If this Court does find that the subject claims are "objectively frivolous," then it must next determine "whether the person who signed the pleadings should have been aware that they were frivolous."[5]

With respect to legal counsel's pre-filing investigation, Rule 11's commentary directs this Court to avoid the use of hindsight, and to determine what was reasonable at the time of filing.[6]

---

[3]    *Id*. Bess and Chesed never identify what Tara's purported, improper purpose was. The corresponding language from Rule 11 on this prong is subpart (b)(1) "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" (Lexis 2010).

[4]    *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)

[5]    *Id*.

[6]    Notes of Advisory Committee on 1983 amendments advise:

> The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. **The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.** Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was

**B.**    **Tara's Counts 1 (contract implied in fact) and 2 (contract implied in law), were not objectively frivolous.**

   **1.**    **Bess and Chesed's Motion only addresses Counts 1 and 2 of the Second Amended Complaint.**

While Bess and Chesed make reference to Plaintiff's "claims" they make no argument against any claim save Tara's Count 1 (breach of contact implied in law) and Count 2 (breach of contact implied in fact). Bess and Chesed fail to advise this Court how any of Tara's other claims were "not supported by a reasonable factual basis" or were brought in bad faith. As such, Tara can only respond with regard to those two counts. As to the remaining counts, or previously asserted counts, Bess and Chesed make no legally cognizable or discernible argument.

Essentially, Bess and Chesed make only two contentions to support the Motion as to Counts 1 and 2: (1) That Tara committed a "blatant fraud upon this [C]ourt" by attaching invoices that may or may not have regarded other, similar dealings among these parties and players;[7] and (2) that Tara "knows that neither Bess nor Chesed ever paid or agreed to pay royalties to [Tara]…."[8]

On these two critical points, Bess and Chesed provide this Court with no evidence in support of the Motion.[9] The only contention that this Court has to rely upon is the unsworn, unsupported assertion of legal counsel for Bess and Chesed that "Exhibit C to the Second

---

based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

(Lexis 2010) (emphasis added). *See also Mike Ousley Productions, Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir.1992) (quoting Advisory Committee Note to Rule 11, as amended in 1983).

[7]    DE 100 at 5.

[8]    DE 100 at 5.

[9]    Bess and Chesed took no discovery in this matter.

Amended Complaint … [regards] payments made by Chesed to Tara for the production of a commercial <u>for a different product!</u>"[10] The argument of counsel is not evidence.[11]

> **a.    The undisputed, sworn evidence shows Tara did not understand the intricate web of entities and players in this venture, and that it believed Bess and Chesed were partners responsible for paying Tara's royalties.**

Bess and Chesed, in conclusory fashion and without the support of any evidence, contend that Tara knew it did not have a right to seek payment of royalties from Bess and Chesed. This contention is squarely at odds with the only sworn position on the issue: the affidavit of a principal of Tara averring that Tara believed that Chesed and Bess were involved and responsible for payment of its royalties. Specifically, Tara's principal swore:

> Chaim Mark Bess assured me, on more than one occasion, that he would help me get paid on the KINOKI FOOT PAD PRODUCT Commercial, and that my work on the Commercial would be rewarded with substantial royalties.[12]

---

[10]    DE 100 at 2 (emphasis, punctuation in original).

[11]    By analogy, argument of counsel cannot be relied upon in ruling on a motion for summary judgment, another form of motion that relies upon evidence and findings of fact and law by the courts. *See Glaverbel Societe Anonyme v. Northlake Mktg. & Supply*, 45 F.3d 1550, 1562 (Fed. Cir. 1995) ("There must be sufficient substance, other than attorney argument, to show that the issue requires trial.") (citing *Scherer v. Rockwell Int'l Corp.*, 975 F.2d 356, 361 (7th Cir. 1992) ("Argument is not evidence upon which to base a denial of summary judgment."), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) ("the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment")).

[12]    *Affidavit of Tara Borakos in Support of Plaintiff's Response to Defendant Chaim Mark Bess and Chesed Direct Holdings' Motion to Dismiss Plaintiff's Amended Complaint*, ¶ 8 [DE 65 at 16-19]. Tara acknowledges that the record does contain unauthenticated e-mails where Bess disclaims any responsibility for payment of the royalties. Bess, a sophisticated businessperson operating an off-shore company out of the Isle of Man with revenues in the millions, might well have wrote these self-serving e-mails to counteract the oral representations sworn to by Tara. But as this issue will never reach the ultimate trier of fact, it is impossible to ascertain from this infant record Bess's credibility. All that is in the record is Tara's undisputed affidavit.

Moreover and relatedly, Tara did not understand the players and relationships in the Kinoki Foot Pads venture. As Tara's principal further swore:

> I was led to believe that Chaim Mark Bess and Juda Levin were partners or joint ventures [sic] on the KINOKI FOOT PAD PRODUCT, and in fact, I learned that the retail company was buying the KINOKI FOOT PAD PRODUCT directly from Mark Bess's company, Chesed Direct Holdings.[13]

So, Chesed and Bess's unsupported castigation of Tara's knowledge is flatly contradicted by the record. There is no deposition testimony or other discovery that contradicts Tara's assertions in the affidavit cited above. Indeed, neither Chesed nor Bess have disputed these sworn contentions with admissible evidence, but merely with the argument of counsel and aggressive punctuation.

In every case cited by Chesed and Tara where the Court found that no reasonable factual basis existed, the parties had conducted considerable discovery that informed those courts' conclusions, which often relied heavily on deposition testimony of claimants.[14] No such record is

---

[13]   *Id.*, ¶ 5.

[14]   *Pelletier v. Zweifel*, 921 F. 2d 1465, 1507-8, 1509, 1510 (11th Cir. 1991) ("In deposition, Pelletier gave the following testimony, which we quote at some length…") ("Pelletier's own testimony, however, conclusively contradicts this allegation."); ("In fact, Pelletier's own testimony shows conclusively that his injury, if any, was not proximately caused by the misrepresentations and omissions."); *Worldwide Primates, Inc. v. McGreal*, 87 F. 3d 1252 (11th Cir. 1996) (referencing findings in *Worldwide Primates, Inc. v. McGreal*, 26 F. 3d 1089, 1091 (11th Cir. 1994) (referencing tracts of deposition throughout the opinion, concluding "the record amply supports the imposition of sanctions because it reflects no basis, either factual or legal, for Worldwide's lawsuit.")); *Access 4 All, Inc. v. Casa Marina Owner, LLC*, 458 F. Supp. 2d 1359 (S.D. Fla. 2006) ("In the instant matter, the Plaintiff's own testimony and the Court's findings support Defendant's assertion that Plaintiff's claim is frivolous and groundless….") vacated by *Access 4 All, Inc. v. Casa Marina Owner, LLC*, 2008 U.S. App. LEXIS 2647 (11th Cir. 2008); *Universal Commun. Sys. v. Turner Broadcasting Sys.*, 2006 U.S. Dist. LEXIS 22062 (S.D. Fla. Feb. 10, 2006) (incorporating by reference an order [DE 45] of that Case No. 05-20047-CIV-JORDAN where this Court (J. Jordan) found that "the plaintiffs conceded that the media defendants are 'not the source or origin of the defamatory statements,' and that the media defendants '[d]o not host the Raging Bull web site, nor [are they] responsible for administration

before this Court. This case had just reached operative pleadings in May 2010. Yesterday, the parties conducted the first deposition in the case. Today, one day later, Tara, Bess and Chesed stipulated to voluntary dismissal of Tara's claims against Bess and Chesed.[15]

   **b.** **The Invoices are immaterial at this stage of the proceedings and have not impacted the duration of this case.**

The invoices that comprise Exhibit C to the Second Amended Complaint (the "Invoices") are a red herring.

First, the point is moot, given that Tara has voluntarily dismissed Chesed and Bess, making these allegations and documents obsolete.

More importantly, however, the Invoices are immaterial because they are not instruments through which claims were made against Bess or Chesed. Conversely, had Tara alleged a claim for "account stated," attached and relied upon the Invoices, and thereafter the appropriate trier of fact heard evidence and found the Invoices to be fraudulent, the case might be different. The Invoices are surplusage, potential evidence. Further, given the complexity of the facts of this case, the number of parties, the web of contractual relationships and assignments, there is still no evidence to show that none of the funds paid to Tara that are reflected in or relate to the Invoices represented some indirect payment to Tara for this particular deal. Bess and Chesed might well

---

thereof.'") (record references omitted); *Footman v. Cheung*, 139 Fed. Appx. 144, 145 (11th Cir. 2005) (regarding only sanctions imposed on counsel after the district court determined: "(1) that [counsel] falsely alleged that [plaintiff] was inflicted with multiple sclerosis…; (2) that [counsel] falsely alleged that [plaintiff] entered the restroom and attempted to use the facilities at [defendant's] restaurant; and (3) that [counsel] altered [plaintiff's] answers to court-ordered interrogatories after the answers had been sworn and notarized.").

[15]  DE 104.

be right, but Tara is aware of no evidence to show it, and there was no discovery on this issue prior to Tara's dismissal of Bess and Chesed.

Similarly, the Invoices were never deployed as evidence for any motion or opposition. Tara had not asked this Court to weight the Invoices or consider them in making any ruling.

Furthermore, the Invoices are not material because this Court did not make any rulings or extend this lawsuit because of the filing of the Invoices. No such reliance or rationale is evident or implied in this Court's order on the Motion to Dismiss. This Court would have erred in ruling on the Motion to Dismiss had it weighed the evidence attached to the Second Amended Complaint. Instead, this Court relied upon the well-pled allegations of the Second Amended Complaint.

More specifically, in ruling on Bess and Chesed's Motion to Dismiss, this Court found that Tara had sufficiently pled these two counts, but did not dismiss the counts because both hinged on a critical point of fact that would only be borne out through discovery. Specifically, who took the money? This Court's order found and directed as follows:

> Nevertheless, what cannot be determined at this stage in the litigation is whether Movants compensated Levin for their use of the commercial. The Court finds that if the Movants paid Levin for use of the commercial, then Plaintiff's right to relief runs through Levin and Levin only. If, however, Movants failed to compensate Levin for their use of the commercial, thereby resulting in Levin's failure to compensate Plaintiff, the Court finds that it would be inequitable to allow Movants to reap the benefits of a commercial which they accepted and did not pay for.[16]

This is the sole fact-issue for these claims, and Tara did not yet know the answer. As established above, the history and course of dealing shows Bess obligating Chesed to pay Tara royalties and

---

[16]    DE 77 at 10.

orally promising to assure payment. Moreover, Tara has sworn to the representations that Bess and Chesed would assure payment of Tara's royalties.

Yesterday, Tara confirmed to its satisfaction that Bess and Chesed paid Levin – indirectly, by funneling millions of dollars to purported New Jersey schools. In so doing, Tara found the answer to this Court's critical issue on the claims. Further, Tara elicited testimony from Chesed averring that it did not assume this obligation as could be contemplated by the agreement with Inventor.[17]

     **2.**      **These claims were not frivolous because they had a reasonable factual basis.**

As discussed at length above, the undisputed record evidence contains Tara's sworn belief that Bess and Chesed would assure payment of Tara's royalties. Tara's belief was – and is – reasonable. History provides that Bess and Chesed had a course of conduct with Tara where they paid or caused payment to Tara. It is not unreasonable that Tara expected this course of dealing to continue. Finally, there is no dispute that Bess and Chesed controlled the distribution of royalties. It is not unreasonable for Tara to believe that this control included and contemplated the orally assured payment of its royalties.

     **3.**      **These claims were not brought in bad faith.**

The "determination of bad faith is a complex inquiry,"[18] and should not be undertaken lightly. Bad faith is not a totally independent basis for sanctions, but requires a considerable showing by the movant. Filing 22-23 complaints based on the same transactions is an example of

---

[17]     To this point, like most every defendant early in litigation, Bess and Chesed had protested that they had any obligation to pay Tara. But without self-authenticated documents, without affidavits, and without discovery to this point, Tara's sworn position on Bess's oral representations could only be allayed through discovery.

[18]     *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1438 n. 20 (11th Cir. 1998).

vexatious litigation that is brought with improper purpose and in bad faith.[19] *Footman* has a disgusting example of bad faith, with legal counsel lying about a client's having multiple sclerosis.[20] Here there is no such showing.

There is no dispute that Tara is entitled to royalties. There is no dispute that Tara has not been paid what it bargained for and is entitled to under its contractual perch on this venture. There is no dispute that Bess and Chesed were intricately involved in this venture, and that Tara swore to its belief that Bess directed the venture and seemed to be a partner of Levin. There is no dispute that Chesed controlled distribution of royalties. For these reasons, there is simply no bad faith in Tara seeking the relief it is clearly entitled to. Given the intricate involvement of both Bess and Chesed and their oral representations to Tara, Tara did not act with improper motives in seeking a legal and equitable remedy from these defendants.

**C.**     **Tara's prior counsel conducted a sufficient pre-filing investigation.**

**1.**     **Prior counsel crafted claims that drew heavily from client documents and were consistent with the parties' established course of dealing.**

Two factors that this Court may consider in determining whether counsel and Tara made a reasonable investigation into the facts before bringing the claims include (1) the complexity of

---

[19]     *Turlington v. Atlanta Gas Light Co.*, 1999 U.S. Dist. LEXIS 11193 (N.D. Ga. Apr. 29, 1999) ("The record revealed that these two complaints were actually the twenty-second and twenty-third cases filed by the plaintiff based upon the same transactions. Based upon this conduct and the court's finding that the two cases and plaintiffs' appeal were entirely frivolous, the court found that a bad faith award was proper.").

[20]     *Footman*, 139 Fed. Appx. 144.

the facts; (2) and the extent to which factual development requires discovery.[21] Both of these particular factors impact this case.

First, this is a complex set of facts, with a web of yet unmapped contractual relationships among hosts of single-purpose companies, some off-shore. To delve into these facts, prior counsel reviewed what seem to be hundreds of e-mails,[22] the Court sees that Tara has submitted undisputed, sworn allegations of the verbal commitments and its state of mind at the relevant time periods.[23] The claims and allegations are consistent with that uncontradicted, sworn position.

> **2.    The Motion fails to show grounds for sanctions against Tara's substitute counsel.**

>> **a.    The Motion is procedurally flawed as to undersigned counsel.**

This Court need not conduct any analysis as to whether undersigned counsel, Tara's substitute counsel, should found jointly liable for sanctions, if any. This is so because Bess and Chesed failed to provide the requisite 21 days' safe harbor to undersigned counsel as required by Rule 11(c)(2).

Bess and Chesed's counsel served the proposed motion on undersigned counsel – who had not seen it before – on June 17, 2010. Bess and Chesed filed their Motion on July 7, 2010, 20 days later. As such, Bess and Chesed failed to provide undersigned counsel the requisite safe harbor to review the draft Motion, barring recovery from Perlman, Yevoli & Albright, P.L. or its attorneys.

---

[21]    *Pelletier v. Zweifel*, 921 F. 2d 1465, 1514 (11th Cir. 1991).

[22]    *See, e.g.*, DE 80, ¶ 34.

[23]    DE 65 at 16-19.

**b.    Undersigned counsel conducted its investigation and voluntarily dismissed Bess and Chesed the day following a deposition of Chesed.**

Though Bess and Chesed do not specify the Plaintiff's counsel against whom it seeks sanctions, Tara understands this relief to be sought against Tara's prior counsel, who filed the Complaint at issue.

Generally, it is the individual and that individual's firm, agency or association that is liable under Rule 11. The notes on the 1993 amendments to Rule 11 read, in part:

> The sanction should be imposed on the persons--whether attorneys, law firms, or parties--who have violated the rule or who may be determined to be responsible for the violation. **The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most situations should be sanctioned for a violation.**

(Lexis 2010) (emphasis added). Rule 11 no longer sets a brightline rule that no attorney but the one signing the filing at issue can be culpable for sanctions, but it takes "extraordinary circumstances" to find substitute counsel culpable. Courts are loathe to extend Rule 11 sanctions to contemporary co-counsel unless there is a showing of co-counsel's substantial participation in preparing the filing.[24]

Still, under the *Turner v. Sungard Business Systems* opinion, a court may impose sanctions on substitute counsel – even if it did not sign the subject filing – if it undertakes actions in the case showing that it stands behind that filing.[25] Nonetheless the *Turner* opinion also

---

[24]    *See Religious Technology Ctr. v. Gerbode*, 1994 U.S. Dist. LEXIS 6432 (C.D. Cal. May 2, 1994) (finding no words, evidence of co-counsel's "part in causing a violation" the court found "that the record is insufficient to establish that any law firm besides Bowles & Moxon was responsible for the drafting and filing of the amended complaint.").

[25]    *See Turner v. Sungard Bus. Sys.*, 91 F.3d 1418, 1420 (11th Cir. 1996).

relieved the prior counsel, who withdrew after conducting further investigation – even though prior counsel filed the complaint and complained-of motion for summary judgment that was later argued by substitute counsel.

Similarly here, undersigned counsel conferred with counsel for Bess and Chesed and took quite seriously their proffered (though unauthenticated) documents and protestations. After some logistical issues attempting to take a telephonic deposition of Chesed's representative from Jerusalem, Israel yesterday, undersigned counsel worked with Tara to see to the stipulated, voluntary dismissal of Chesed and Bess based on the documents authenticated and testimony given. This reasonable investigation took very little time. In the interim, while undersigned counsel has necessarily made several time-sensitive filings, it has not filed any motion or taken any other sanctionable action like arguing for summary judgment in *Turner*.

WHEREFORE, Plaintiff, Tara Productions, Inc., respectfully requests that this Honorable Court deny the relief sought in Bess and Chesed's Motion, and grant such other, and further relief as the Court deems just and proper.

## <u>Certificate of Service</u>

I hereby certify that on July 30, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

/s/ Joshua B. Spector
Paul D. Turner
Florida Bar No. 113743
Joshua B. Spector
Florida Bar No. 0584142

Perlman, Yevoli & Albright, P.L.
Museum Tower
200 South Andrews Avenue, Suite 600
Ft. Lauderdale, FL 33301
Tel. (954) 566-7117
Fax. (954) 566-7115
E-mail: pturner@pyalaw.com
E-mail: jspector@pyalaw.com

<u>**SERVICE LIST**</u>

**Tara Productions, Inc. v. Hollywood Gadgets, Inc., Xacta 3000, Inc. d/b/a Kinoki Detox, Xacta 3000, Inc., Chesed Direct Holdings Limited, Chaim "Mark" Bess and Juda Levin, individually**

**Case No. 09-CV-61436-COHN/SELTZER**
**United States District Court, Southern District of Florida**

Terri Ellen Tuchman Meyers
Kluger Kaplan Silverman Katzen & Levine, P.L.
201 S. Biscayne Boulevard
Suite 1700
Miami, FL 33131-8424
T: 305-379-9000
F: 305-379-3428
Email: tmeyers@klugerkaplan.com
*Served via CM/ECF*
**Counsel for Defendants:**
    **Chesed Direct Holdings Limited**
    **Chaim Bess**

Juda Levin
341 11th Street
Lakewood, NJ 08071
732-363-8000
*Served via U.S. Mail*
**Defendant,** *Pro Se*

Paul D. Turner
Joshua B. Spector
Perlman, Yevoli & Albright, P.L.
Museum Tower
200 South Andrews Avenue, Suite 600
Ft. Lauderdale, FL 33301
T: 954-566-7117
F: 954-566-7115
E-mail: pturner@pyalaw.com
E-mail: jspector@pyalaw.com
*Available for service via CM/ECF*
**Counsel for Plaintiff**