UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case No.: 09-CV-61436-COHN/SELTZER

TARA PRODUCTIONS, INC.,

    Plaintiff,

v.

HOLLYWOOD GADGETS, INC., et al.

    Defendants.
_____/

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BY THE COURT,
ALTERNATIVELY MOTION FOR SUMMARY JUDGMENT AGAINST
DEFENDANTS JUDA LEVIN AND HOLLYWOOD GADGETS, INC.
AND INCORPORATED MEMORANDUM OF LAW**

    Pursuant to Rules 55(b), 56 Fed.R.Civ.P., and Rule 7.5, S.D. Fla. L.R., Plaintiff, Tara Productions, Inc., hereby moves this Honorable Court for entry of a default judgment as to Defendants Juda Levin ("**Levin**"), and Hollywood Gadgets, Inc., alternatively for entry of partial summary judgment for the undisputed material facts and summary evidence described here:

**Introduction**

    Levin and a coterie of shell companies promised a two-percent royalty to Plaintiff on the actual cash collections of the Kinoki Footpad line of products as part of the consideration for Plaintiff's production of an infomercial. Levin and his affiliates thereafter took Plaintiff's work and licensed it Chesed Direct Holdings Limited, who in turn sublicensed the product to a non-party distributor. Levin collected and disbursed royalties on the product but failed to pay Plaintiff.

    Hollywood Gadgets is subject to a default already. Levin never answered Plaintiff's *Second Amended Complaint*, despite this Court's April 22, 2010 order compelling him to do so. As such, a default judgment is appropriate as to both defendants.

Alternatively, Plaintiff moves for summary judgment as no disputed issues of material fact exist and Plaintiff is entitled to judgment as a matter of law.

I.   **MOTION FOR DEFAULT JUDGMENT**

A.   **Levin failed to comply with this Court's order to answer the *Second Amended Complaint***

Recently, Plaintiff filed its *Motion for Default, Sanctions and to Compel Against Defendants Juda Levin and Hollywood Gadgets, Inc.* [DE 113] seeking discovery-related sanctions, including the entry of a default by the Court for (1) discovery misconduct; and (2) Levin's failure to comply with this Court's April 22, 2010 order [DE 79 at 3] requiring him to respond to the *Second Amended Complaint*. Here, Plaintiff clarifies and expands upon the relief sought, seeking the entry of a default judgment against Levin.

Levin has appeared and defended in this action. More recently, however, Levin evinced an intention to disregard this lawsuit, including his discovery obligations. *See* DE 113 2-3. For these reasons, Plaintiff seeks the entry of a default judgment.

Plaintiff's compensatory damages are $352,092.60, which equates to the two-percent royalty due to Plaintiff. Together, with the 12% interest to which Plaintiff is entitled through its contract with Hollywood Skin Concepts, ratified and adopted by Levin and Hollywood Gadgets, Plaintiff prays for the total damages of $438,813.91 for the reasons set forth in paragraph 20, *infra*, and **Demonstrative Exhibit 5**.

Additionally, Levin's failure to respond to the *Second Amended Complaint* gives rise to the inference that Levin concedes the well-pleaded allegations of it. If this Court is not persuaded to enter a default judgment, Plaintiff submits that as a result of Levin's failure to respond to the *Second Amended Complaint*, there is not dispute as to any of the material facts alleged in the *Second Amended Complaint*. To the extent further discussion of the summary evidence is

2

necessary, Plaintiff's motion summary judgment follows.

## II.  MOTION FOR SUMMARY JUDGMENT

### A.  Statement of Undisputed Facts

1. Levin is the last remaining, non-default defendant in this case. The Clerk of the Court entered a default as to Hollywood Gadgets on October 27, 2009. [DE 19]. Plaintiff voluntarily dismissed its claims against defendants Chaim Bess and Chesed Direct Holdings Limited. [DE 104]. Xacta 3000, Inc. filed for bankruptcy protection.

2. In its Order of April 22, 2010, this Court ordered Levin to respond to Plaintiff's *Second Amended Complaint* by May 7, 2010. [DE 79 at 3]. To date, Levin has failed to comply with this Court's Order and has not responded to the *Second Amended Complaint*.

3. Both Levin and Hollywood Gadgets were duly noticed for depositions but failed appear. *See* DE 113. Both failed to respond to written discovery. *Id*.

4. Plaintiff's *Second Amended Complaint* asserts several counts against Levin, including Count I for breach of contract implied in law, otherwise unjust enrichment, Count II for breach of contact implied in fact, and Count III for civil conspiracy. [DE 80]. None of these allegations have been disputed by Levin.

### The Agreements

5. Levin, signing for third-party Hollywood Skin Concepts, Inc., entered into an agreement for Plaintiff to produce an infomercial for Kinoki Footpads (the "**Product**"). This agreement was executed on or about March 7, 2007. A true and correct copy of this agreement, titled *Infomercial Production Agreement*, is attached here as **Exhibit 1** (the "**Infomercial Agreement**"). [DE 80, ¶ 16]. This Court has previously analyzed the Infomercial Agreement at length in its order dated April 16, 2010. [DE 77 at 2-3].

3

6.   Under the Infomercial Agreement, Plaintiff was entitled to a royalty payment equal to two percent (2%) of the actual cash collections resulting from sale of the Product. Exh. 1, ¶ 6(a).

7.   The Infomercial Agreement required Hollywood Skin Concepts to pay Plaintiff regardless of whether it licensed any rights to a third party to manufacture and sell the Product in exchange for a royalty or a similar payment. Exh. 1, ¶ 6(c).

8.   Plaintiff produced the infomercial.[1]

9.   Thereafter, Hollywood Skin Concepts, Inc., joined along with "Judah Levin, on behalf of himself as an individual," Xacta 3000, Inc., Kinoki USA, Inc., and Hollywood Gadgets, Inc. and entered into an agreement to license the Product to Chesed Direct Holdings Limited ("**Chesed**") for manufacture, promotion and sale of the Product. That agreement is titled *Production License Agreement* and was executed on or about December 1, 2007. A true and correct copy of this agreement is attached here as **Exhibit 2** (the "**Chesed License Agreement**").[2]

10.   By and through the Chesed License Agreement, Hollywood Skin Concepts – along with "Judah Levin, on behalf of himself as an individual," Xacta 3000, Inc., Kinoki USA, Inc., and Hollywood Gadgets, Inc. – (collectively referred to therein as "**Inventor**") licensed Plaintiff's work and other rights to Chesed. See, e.g., Exh. 2, ¶ 3(a) ("Inventor hereby grants

---

[1]   *Compare* 2d Am. Compl. ¶ 57 [DE 80], *Answer, Affirmative Defenses* of Mark "Chaim" Bess and Chesed ("**Chesed Answer**"), ¶ 57 [DE 84].

[2]   *See* Transcript of Deposition of Chesed Direct Holdings Limited, 7:20-23, 8:15-19, Exh. 12. A true and correct copy of this transcript is attached here as **Exhibit 3** ("**Chesed Dep.**"). Plaintiff has not attached all of the exhibits to this deposition transcript as many of the documents are banking records of Chesed that are duplicative of Chesed's testimony. Additionally, while these banking records were vetted, redacted and produced by counsel for Chesed, Plaintiff has found at least two indicia of bank account numbers. Of course, Plaintiff will abide by the Court's further instruction, if any, and provide the withheld exhibits for an *in camera* review, move to file them under seal, or take any other, additional action as required or prompted by the Court.

4

[Chesed] the exclusive worldwide right and license to make, have made, use, sell, offer to sell, import and sublicense the Product during the term of this Agreement"); ¶¶ 3(b), 5 (licensing Inventor's marketing materials and commercial – including Plaintiff's Infomercial).

11.     Chesed then executed an agreement with IdeaVillage Products Corp. ("**IdeaVillage**") titled *U.S. Retail Distribution Agreement: Kinoki*, which they executed on or about January 17, 2008 for sale of the Product by Chesed to IdeaVillage, which would then distribute the Product to retailers. A true and correct copy of this agreement was produced by IdeaVillage pursuant to a *subpoena duces tecum* along with a declaration by its records custodian,[3] labeled IDVILL_00001 to IDVILL_00011, and filed under Plaintiff's *Motion to File Under Seal* [DE 114] as Sealed Document No. 1 (the "**IdeaVillage Distribution Agreement**").

## Sales of the Product

12.     Chesed did produce and sell the Product to one customer: IdeaVillage.[4]

13.     Chesed collected actual cash for sale of the Product, including upsells worldwide, but net of refunds, bad debt and returns, which the corporate representative estimated at $17,400,000.[5]

14.     IdeaVillage confirmed the exact figure in producing a report of payables management which reflects 43 payments from IdeaVillage to Chesed for the Product, totaling exactly $17,604,630.00.[6]

## The Royalty Payments

---

[3]     *See Declaration of Records Custodian of IdeaVillage*, a copy of which is attached here as **Exhibit 4**.

[4]     Chesed Dep. 11:22 to 12:5.

[5]     Chesed Dep. 11:22 to 12:5.

[6]     *See* Sealed Document No. 2, filed with Plaintiff's *Motion to File Under Seal* [DE 114].

5

15. The specific terms of the Infomercial Agreement directed that Plaintiff was to be paid "a royalty payment of two percent (2%) of the actual cash collections (but not including sales tax and shipping and handling receipts) of Client from all sales of the Product, including Upsells, worldwide, but net of refunds, bad debt and returns." Exh. 1, ¶ 6(a).

16. Two percent of $17,604,630.00 is $352,092.60.

17. Payments to Plaintiff were due "on or before the 45th day following each calendar quarter, commencing with the first sale of any Products." Exh. 1, ¶ 6(d). Overdue amounts incurred interest at the rate of 12% per year on any royalties paid more than 30 days after the due date. Exh. 1, ¶ 7(d).

18. Plaintiff is also entitled to attorneys' fees and costs incurred by Plaintiff in seeking payment of overdue amounts. Exh. 1, ¶ 7(d).

19. Plaintiff was not paid the royalties for the sale of the Product. DE 80, ¶ 19.

20. From the record of payments by IdeaVillage to Chesed, the sales dates for the four quarters of 2008 are identifiable. *See* Sealed Document No. 2 [DE 114]. Plaintiff has extrapolated the data from that document to determine prejudgment interest at the rate set in the Infomercial Agreement by calculating the due dates for royalties, and the subsequent date upon which interest began to run at the contractual rate of 12% per year. Plaintiff's **Demonstrative Exhibit 5**, attached here, shows Plaintiff's calculations of prejudgment interest and royalties based on the payments made to Levin's licensee, Chesed. In total, Plaintiff calculates its total royalties due at $352,092.60. The interest due thereon is $86,721.31. Therefore, Plaintiff claims damages totaling $438,813.91.

6

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 – (954) 566-7117

21. Instead of paying Plaintiff, Levin directed Chesed to divert payments to other, third parties. In sum, Levin diverted more than $3,300,000 to payees other than Levin, Hollywood Gadgets, Hollywood Skin Concepts or Plaintiff.[7]

22. Regardless of their agreement with Chesed, the Chesed License Agreement required Inventor (including Levin) to "remain liable to pay the royalties or other compensation, if any, due to the Talent, producer [Plaintiff] or any party in connection" with the infomercial. Exh. 2, ¶ 3(b)(i). Chesed has provided testimony that did not undertake any obligation to pay Plaintiff's royalties. Chesed Dep. 15:14-17.

### B.  Standard for Motion for Summary Judgment

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Storfer v. Guar. Trust Life Ins. Co.*, 2010 U.S. Dist. LEXIS 110282, *4-6 (S.D. Fla. Oct. 18, 2010) (citing Fed. R. Civ. P. 56(c)). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id*. at *5.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as

---

[7] *See* Chesed Dep. at 24:7 to 25:2, 26:2-10, 28:11-25, 29:18-25, 33:12-22. *See also id*. at 34:6-10 (Chesed confirms that all payments covered in the deposition were the only payments made by Chesed on the Chesed License Agreement). Curiously, two of the recipients, purportedly education non-profit corporations based in or near Levin's residence, received more than $3,000,000 of the royalties. Both were served with subpoenas for depositions *duces tecum*. Both failed to appear or otherwise acknowledge the subpoenas.

7

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 – (954) 566-7117

to the material facts." *Id.* (citing *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

C. **Summary judgment is proper on Count II (Breach of Contract Implied in Fact)**

This Court has also set forth the governing standard for Count II, Plaintiff's claim for breach of contract implied in fact:

> Under Florida law, "a contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." *Commerce P'ship*, 695 So.2d at 385. "The enforceability of this obligation turns on the implied promise, not on whether the defendant has received something of value. A contract implied in fact can be enforced even where a defendant has received nothing of value." *Id.* at 387. "In these contracts, the parties have in fact entered into an agreement but without sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement." *Tooltrend, Inc.*, 198 F.3d at 806.

[DE 77, at 11]. "While the law will not recognize an implied-in-fact contract where an express contract exists, a contract may be inferred where an express contract fails for lack of proof." *Baron v. Osman*, 35 Fla. L. Weekly D1464a (Fla. 5th DCA July 2, 2010) (citing *Quayside Assocs., Ltd. v. Triefler*, 506 So. 2d 6, 7 (Fla. 3d DCA 1987)).

In this case, there is no summary evidence that Levin or Hollywood Gadgets assumed or formally ratified the Infomercial Agreement. That said, Plaintiff's discovery efforts have been stymied by Levin and Hollywood Gadgets's discovery misconduct including their failure to appear or respond to written discovery. (¶ 3, *supra*.)

Nonetheless, this Court should find that an implied-in-fact contract exists here for two reasons.

First, the facts demonstrate ratification of the Infomercial Agreement by Levin and Hollywood Gadgets. Levin and Hollywood Gadgets co-opted Plaintiff's consideration given for

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 – (954) 566-7117

that express contract. Specifically, Levin and Hollywood Gadgets co-opted Plaintiff's infomercial, licensing it to Chesed through the Chesed License Agreement. (¶¶ 9-10, *supra*.) These actions demonstrate that some sort of ratification is present – or else Levin and Hollywood Gadgets would not have made the representations or been able to give the licenses related in the Chesed License Agreement.

Second, and more importantly, the facts demonstrate Levin's intent to be bound by the royalty obligations of the Infomercial Agreement. In the Chesed License Agreement Levin and Hollywood Gadgets acknowledge their own joint obligation to pay royalties to Plaintiff and other talent. (¶ 22, *supra*.)

For these reasons, this Court should find that an implied-in-fact contract exists here, and can be inferred from the summary evidence. Among the terms that Levin negotiated and ratified were the two-percent royalty due to Plaintiff, the contractual rate of interest for overdue royalties, and the prevailing party attorneys' fees and legal costs provision. (¶¶ 5-7, *supra*.) These terms should be implied-in-fact as to Levin and Hollywood Gadgets. Plaintiff seeks compensatory damages of its overdue royalties in the amount of $352,092.60. (¶ 20, *supra*.) Plaintiff also seeks imputation of the Infomercial Agreement's prejudgment interest rate, which would equate to prejudgment interest of $86,721.31 as of October 22, 2010. *Id*. In total, summary judgment is appropriate for damages in the amount of $438,813.91. Additionally, this Court should award attorneys' fees and costs to Plaintiff.

### D.  **Plaintiff is entitled to summary judgment on Count I (Unjust Enrichment)**

In its order of April 16, 2010, this Court set forth the applicable legal standard for this cause of action, stating:

> "A contract implied in law, or 'quasi-contract,' operates when there is no contract 'to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving

9

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 – (954) 566-7117

compensation.'" *Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 4th Dist. 2007) (quoting *Commerce P'ship 8098 Ltd. P'ship v. EquityContracting Co.*, 695 So. 2d 383, 386 (Fla. Dist. Ct. App. 4th Dist. 1997)). "'A contract implied in law is a legal fiction, an obligation created by the law without regard to the parties' expression of assent by their words or conduct.'" *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (quoting *Commerce P'ship*, 695 So. 2d at 386); *see also Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999) ("Although the parties may have never by word or deed indicated in any way that there was any agreement between them, the law will, in essence, 'create' an agreement in situations where it is deemed unjust for one party to have received a benefit without having to pay compensation for it.").

To prevail on a quasi-contract theory, a plaintiff must show that: (1) plaintiff conferred a benefit on the defendant; (2) defendant has knowledge of the benefit; (3) defendant voluntarily accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for defendant to retain the benefit without paying fair value to plaintiff. *Hull & Co., Inc. v. Thomas*, 834 So. 2d 904, 907 (Fla. Dist. Ct. App. 4th Dist. 2003). Likewise, the elements of a claim for unjust enrichment track these same four elements. *See, e.g., Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1059 (Fla. Dist. Ct. App. 4th Dist. 2006); *Circle Fin. Co. v. Peacock*, 399 So. 2d 81, 84 (Fla. Dist. Ct. App. 1st Dist. 1981) ("[T]he doctrine [of unjust enrichment] is a recognition that a person is accountable to another on the ground that if the former were not required to do so, he would unjustly benefit, or the other would unjustly suffer loss.").

[DE 77 at 9-10]. The four elements of quasi-contract apply here.

First, the summary evidence shows that Plaintiff conferred a benefit on Levin and Hollywood Gadgets. Levin manipulated contract-party Hollywood Skin Concepts to snatch the infomercial – free and clear of contractual restraints. Levin then packaged Plaintiff's infomercial as part of the consideration assigned and licensed by Levin and Hollywood Gadgets to Chesed. (¶¶ 5, 9-10, *supra*.) Levin and Hollywood Gadgets thereby co-opted the consideration furnished by Plaintiff in the Infomercial Agreement. Moreover, Plaintiff was entitled to a two-percent royalty on sales of the Product. (¶ 6, *supra*.) By failing to pass through Plaintiff's royalty, Levin

10

and his companies intercepted this benefit from Plaintiff, enriching themselves with the two-percent royalty.

As for the second and third elements, Levin and Hollywood Gadgets certainly had knowledge of and accepted this benefit – they reference it throughout their agreement with Chesed. (¶ 22, *supra*.)

Fourth, based on the summary discovery, Plaintiff claims more than $400,000 in royalties. (¶ 20, *supra*.) No one has paid Plaintiff any portion of these royalties. A straw-man, Hollywood Skin Concepts, extracted Plaintiff's consideration and conveyed it to Levin and companies, who in turn used it to enrich themselves without the contractual obligations of Hollywood Skin Concepts. (¶¶ 5-9, *supra*.) Levin diverted more than $3,000,000 to disinterested in third parties – purported (neighborhood) charities that would not appear for their respective depositions in this case. (¶ 21, *supra*.) Plaintiff received no royalties. (¶ 19, *supra*.) Certainly it is inequitable for Levin and companies to utilize Plaintiff's work and intercept Plaintiff's royalties.

For these reasons, Plaintiff seeks an award of $352,092.60 against Levin and Hollywood Gadgets.

E.   **Summary judgment is proper on Count III (Civil Conspiracy to Defraud)**

Florida courts recognize a civil conspiracy as an independent tort under certain circumstances. *Wilcox v. Stout*, 637 So. 2d 335, 336 (Fla. 2d DCA 1994)."[I]f the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent tort." *Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547, 550 (Fla. 1977).

Here, the undisputed allegations of the *Second Amended Complaint* demonstrate a conspiracy. Levin, by and through the host of shell entities he negotiated and acted for, deliberately induced Plaintiff to produce the infomercial for the Product. Thereafter, Levin used

11

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 – (954) 566-7117

the barriers of the shell entities to divert more than $3,300,000 in royalties to disinterested third parties all the while insulated from Plaintiff's contractual claim which lay with the shell entity Hollywood Skin Concepts. As a result, Plaintiff lost nearly $400,000 in royalties. Levin, Hollywood Gadgets, and Hollywood Skin Concepts acted with a common purpose. Their unity is demonstrated by their joint obligations and undertakings with Chesed in the Chesed License Agreement, wherein they peddled Plaintiff's work and were all entitled to payment of royalties. Yet, ultimately none of the "Inventor" group to the Chesed License Agreement took any royalties. Independent, interested companies would not have permitted Levin to give away every dollar that they were to make in the Chesed License Agreement. Levin clearly lead a conspiracy with these entities to defraud Plaintiff of its due royalties.

For these reasons, Plaintiff seeks an award of $352,092.60, to be made against Levin and Hollywood Gadgets, jointly and severally as co-conspirators.

WHEREFORE, Plaintiff respectfully requests this Court enter a default judgment as to Juda Levin and Hollywood Gadgets, Inc. in the amount of $438,813.91 inclusive of compensatory damages and prejudgment interest through the date of October 22, 2010, with interest continuing to accrue at the contractual rate of 12% per year, awarding Plaintiff its reasonable attorneys' fees and costs; alternatively, entering final summary judgment with the same relief; and for such other and further relief as the Court deems just and proper.

### Certificate of Service

I hereby certify that on October 22, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day (post 5 p.m.; U.S. Mail will be stamped tomorrow) on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

/s/ Joshua B. Spector

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 – (954) 566-7117

                Paul D. Turner
                Florida Bar No. 113743
                Joshua B. Spector
                Florida Bar No. 0584142
                Perlman, Yevoli & Albright, P.L.
                Museum Tower
                200 South Andrews Avenue, Suite 600
                Ft. Lauderdale, FL 33301
                Tel. (954) 566-7117
                Fax. (954) 566-7115
                E-mail: pturner@pyalaw.com
                E-mail: jspector@pyalaw.com

13

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 – (954) 566-7117

**SERVICE LIST**

**Tara Productions, Inc. v. Hollywood Gadgets, Inc., Xacta 3000, Inc. d/b/a Kinoki Detox, Xacta 3000, Inc., Chesed Direct Holdings Limited, Chaim "Mark" Bess and Juda Levin, individually**

**Case No.: 09-CV-61436-COHN/SELTZER**
**United States District Court, Southern District of Florida**

Juda Levin & Hollywood Gadgets, Inc. c/o Juda Levin, VP
341 11th Street
Lakewood, NJ 08071
732-363-8000
Served via U.S. Mail
**Defendants,** *Pro Se*

Paul D. Turner
Joshua B. Spector
Perlman, Yevoli & Albright, P.L.
Museum Tower
200 South Andrews Avenue, Suite 600
Ft. Lauderdale, FL 33301
T: 954-566-7117
F: 954-566-7115
E-mail: pturner@pyalaw.com
E-mail: jspector@pyalaw.com
*Available for service via CM/ECF*
**Counsel for Plaintiff**