**Yehuda Levin**
**341 11th Street**
**Lakewood, NJ 08701**
**(908) 670-0080**



November 9, 2010

Clerk's Office
United States District Court for the State of Florida
299 East Broward Blvd.
Ft. Lauderdale, FL 33301

     **Re:**    *Tara Productions, Inc. v Hollywood Gadgets, et al*
              *Case No: 09-CV-61436*
              *OPPOSITION TO PLAINTIFF'S MOTION for DEFAULT/SUMMARY JUDGMENT*

Dear Sir/Madame:

Please accept this letter memorandum in lieu of brief in opposition to the above motion for summary judgment. Plaintiff moves for summary judgment based upon an alleged breach of contract and/or unjust enrichment of the above matter.

<u>**Statement of Facts**</u>

The parties entered into an agreement to prepare an infomercial on behalf of the defendant Hollywood Skin Concepts. Defendant Levin went to Florida and plaintiff represented that they would prepare and produce an infomercial for Kinoki Footpads. It is understood that the plaintiff has been performing this service well over 20 years. The defendant is a novice to the infomercial business, and inquired as to the parameters, rules, and regulations involving said infomercials, and was advised by the plaintiff that they would "take care of everything." The product was shown by Hollywood Skin Concepts to the plaintiff herein, who reviewed the

product's packaging and label material from China. Despite anything to the contrary in said agreement, the plaintiff Tara Productions prepared the entire infomercial, including its <u>content</u> and transcript, and represented to the defendant that it was entirely proper accurate and complied with all local, Federal and State rules and regulations. It was the plaintiff that actually supplied and created the content of the infomercial, including all testimonials and representations concerning all aspects of the Kinoki Footpad product, claims of performance of the product and its qualities. None of the actual information provided in the commercial was supplied by the defendant herein. The plaintiff assured the defendant that all of the contents of the entire advertisement were proper and legal and in compliance of all laws – including testimonials, which were orchestrated, prepared, and arranged by the plaintiff, including the <u>content</u> therein.

In March 2007, the infomercial agreement was signed, to produce the commercial. In March 2008, the Federal Trade Commission initiated an investigation of said infomercial, and alleged there were multiple violations. The commercial was then removed from the air on/about June 2008. In December 2008, the Federal Trade Commission filed a complaint against the defendant Juda Levin and his companies for fraud and unsubstantiated claims made in the commercial, which was prepared, including <u>form and content</u> entirely by the plaintiff Tara Productions.

In November 2008, Tara Productions filed a complaint against the defendant for the royalties due. The defendant herein actually paid to plaintiff $125,000.00 in fees to the charges against any and all royalties, pursuant to the agreement. As a result of the investigation of the Federal

Trade Commission and suit filed by the FTC against Juda Levin, he was forced to enter into a Stipulated Final Judgment in order for injunctive relief – which permanently prohibits and restrains him from manufacturing, labeling, advertizing, promoting, offering for sale, selling or distributing or assisting others in manufacturing, labeling, advertizing, promoting, offering for sale, selling or distributing any product of any dietary, supplement, food, drug or device. In addition, there is a judgment entered against him in the amount of $14,500,000.00 held in abeyance, to be imposed for any future violations (attached copy of Stipulated Agreement – Exhibit A). This suit and injunction order against Mr. Levin has essentially put him out of marketing business in many areas, which have been a life long occupation, as a result of the claims orchestrated and provided by the plaintiff Tara Productions herein.

As a result of this infomercial, Xacta, Inc., defendant's corporation, was subject of five lawsuits including Ulrich v. Xacta (civil case), Nelson v. Xacta (NJ class action), Hojiwala v. Xacta (CA class action), sued by the New Jersey Attorney General, and a fifth suit by the Oregon Attorney General. There was over a $1,500,000.00 in legal fees. This is all a result of the claims of the infomercials, which was entirely manufactured including content, by Tara Productions.

The plaintiff's now move for judgment of over $400,000.00, and fail to reveal to the Court that they have already been paid $125,000.00 by the defendant herein to be charged against any future commissions or royalties.

All the while, the plaintiff was well aware that the defendant Juda Levin suffered a severe stroke and was hospitalized at Mount Sinai Hospital in New York City, New York and underwent an extensive five months of rehabilitation – including physical therapy. His memory was impaired, he suffered loss of balance – including limping, lack of coordination, cognitive loss – including ability to schedule, write and concentrate. The plaintiff hired a detective to photograph an unknown person with Florida license plates – falsely alleging it to be Juda Levin and sought sanctions against Juda Levin for perpetrating a fraud against the Court. That individual with Florida license plates could be easily traced to another individual. All the while, Juda Levin was hospitalized at the time of said investigation and photographing conducted by the plaintiff and their investigators.

In short, the plaintiff has attempted to mislead the Court, taking total advantage of the defendant's medical condition, failed to divulge the receipt of $125,000.00 and seek summary judgment. When in fact, the plaintiff has caused irrefutable harm to the defendant herein, breached the contract and supplied false information in preparation of the infomercial. The plaintiff is the party in breach of said contract. They provided not only defective services, but false and fraudulent information and are not entitled to recover damages. It is further noted on the contract in plaintiff's moving papers that Juda Levin entered the agreement as Vice President of the corporation. Summary judgment cannot be granted, as there are genuine issues of material fact to be decided.

**LEGAL ARGUMENT**

Summary judgment may only be granted after a careful scrutiny of the pleadings, depositions, interrogatories and all discovery show there is genuine issue of material fact for the Trier of same to decide. *Storfer v. Guar. Trust Life Ins. Co.,2010 U.S. Dist. LEXIS 110282, *4-6 (S.D. Fla. Oct. 18, 2010)(citing FED. R. Civ. P. 56(c))*. The Movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions which demonstrate the absence of a genuine issue of material fact." The plaintiff fails to meet the burden herein for the following reasons.

The defendant Juda Levin never signed individually, and the issue of whether there was a conspiracy as alleged by the plaintiff is certainly an issue of material fact for the trier of same to decide. Further, the plaintiff both prior and subsequent to the signing of the contract through its representations and actions provided all necessary material in the infomercial, produced same in its entirety, and represented to the plaintiff that it was proper, legal and appropriate to regulations of the industry. The defendant did not supply the materials herein, but only the product previously set forth. All representations made in the infomercial were the product of the plaintiff herein, who constantly assured defendant that it was legal, as well as proper and accurate for the industry. As it was later discovered, when the Federal Trade Commission filed the action against Juda Levin, that the allegations and representations in the infomercial were allegedly fraudulent and in violation of the law. All of this information was supplied by, orchestrated by, produced by and presented by the plaintiff. The plaintiff further holds an obligation to the Federal Trade Commission as the producer to provide accurate information and is responsible for same (see attached Exhibit B of the FTC). Whether this information is

fraudulent and <u>who provided</u> the same to be produced in the infomercial are certainly genuine issues of material fact for the jury and/or Court to decide and only after presentation of full case and witnesses, can a decision be made. Therefore, this matter cannot be disposed of on a motion for summary judgment.

Finally there is a disputed fact as to the credit for $125,000.00 paid to the plaintiff on account in the above matter and has not been recognized by the plaintiff and is a material issue of fact. There is a multitude of disputed facts and issues to be decided by the jury, including any alleged conspiracy which cannot be dispositive by summary judgment.

## IN CONCLUSION

For all the aforementioned reasons, it is respectfully submitted that motion for summary judgment must be denied.

Thank you.

Respectfully submitted,

Juda Levin
Attorney Pro Se

Exhibit A

WILLARD K. TOM
General Counsel

VICTOR F. DeFRANCIS
SYDNEY M. KNIGHT
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Mail Drop NJ-3212
Washington, D.C.  20580
Tel: (202) 326-3495, -2162
Fax: (202) 326-3259
email:  vdefrancis@ftc.gov

PAUL J. FISHMAN
United States Attorney
J. ANDREW RUYMANN
Assistant United States Attorney
402 East State Street, Room 430
Trenton, NJ  08608
Tel: (609) 989-2190
Fax: (609) 989-2360

Attorneys for Plaintiff
Federal Trade Commission

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) Hon. Joel A. Pisano |
| | ) |
| v. | ) CV-09-399-JAP |
| | ) |
| XACTA 3000, INC., a corporation, | ) |
| BARUCH LEVIN, individually and | ) |
| as an officer of the corporation, and | ) |
| YEHUDA LEVIN a/k/a JUDA LEVIN, | ) |
| individually and as an officer | ) |
| of the corporation, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## STIPULATED FINAL JUDGMENT AND ORDER FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AS TO DEFENDANTS XACTA 3000, INC. AND YEHUDA LEVIN

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), filed a Complaint for Injunctive and Other Equitable Relief against Defendants Xacta 3000, Inc., Baruch Levin, and Yehuda Levin ("Complaint") pursuant to Section 13(b) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 53(b), alleging deceptive acts or practices and false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

The Commission and Defendants Xacta 3000, Inc. and Yehuda Levin ("Defendants") have stipulated to entry of the following agreement for permanent injunction and settlement of claims for monetary relief in settlement of the Commission's allegations against Defendants.

The Court, having been presented with this Stipulated Final Judgment and Order for Injunctive and Other Equitable Relief as to Defendants Xacta 3000, Inc. and Yehuda Levin (Order), finds as follows:

### FINDINGS

1.    This Court has jurisdiction over the subject matter of this case and jurisdiction over Defendants.  Venue in the District of New Jersey is proper.

2

2.    The acts and practices of Defendants are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

3.    The Complaint states a claim upon which relief can be granted under Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, and the Commission has the authority to seek the relief it has requested.

4.    Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order. Defendants also waive any claim that they may have held under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order.

5.    This Order reflects the negotiated agreement of the Commission and Defendants, and Defendants have entered into this Order freely and without coercion.

6.    The Commission and Defendants stipulate and agree to entry of this Order under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), without trial or final adjudication of any issue of fact or law. By entering into this stipulation, Defendants do not admit or deny any of the allegations set forth in the Complaint, other than jurisdictional facts.

7.    This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be

3

provided by law.

8.   Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this Order are binding upon Defendants, and their officers, agents, servants, representatives, employees, and all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise.

9.   Nothing in this Order obviates the obligation of Defendants to comply with Sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45 and 52.

10.   The Commission's action against Defendants is an exercise of the Commission's police or regulatory power as a governmental unit.

11.   The paragraphs of this Order shall be read as the necessary requirements for compliance and not as alternatives for compliance, and no paragraph serves to modify another paragraph unless expressly so stated.

12.   Each party shall bear its own costs and attorneys' fees.

13.   Entry of this Order is in the public interest.

**ORDER**

**DEFINITIONS**

1.  "Advertising" and "promotion" mean any written or verbal statement, illustration, or depiction designed to effect a sale or create interest in the purchasing of goods, whether it appears in a brochure, newspaper, magazine, pamphlet, leaflet, circular, mailer, book insert, free standing insert, letter, catalogue, poster, chart, billboard, public transit card, point of purchase display, packaging, package insert, label, film, slide, radio, television or cable television, audio program transmitted over a telephone system, program-length commercial ("infomercial"), the Internet, email, press release, video news release, or in any other medium.

2.  "Commerce" means as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

3.  "Covered product" means any dietary supplement, food, drug, or device.

4.  "Individual Defendant" means Yehuda Levin.

5.  "Corporate Defendant" means Xacta 3000, Inc. and its successors and assigns.

6.  "Food," "drug," and "device" mean as defined in Section 15 of the FTC Act, 15 U.S.C. § 55.

5

7.   The terms "and" and "or" in this Order shall be construed conjunctively or disjunctively as necessary, to make the applicable sentence or phrase inclusive rather than exclusive.

8.   The term "including" in this Order means "including without limitation."

## I.

## PROHIBITED BUSINESS ACTIVITIES

**IT IS HEREBY ORDERED** that Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, are hereby permanently enjoined and restrained from manufacturing, labeling, advertising, promoting, offering for sale, selling, or distributing; or assisting others in manufacturing, labeling, advertising, promoting, offering for sale, selling, or distributing; any Covered Product, in or affecting commerce.

## II.

## EQUITABLE MONETARY RELIEF

**IT IS FURTHER ORDERED** that:

A.   Judgment is hereby entered in favor of the Commission, and against Defendants for equitable monetary relief, including, but not limited to, consumer redress, in the amount of fourteen million five hundred thousand U.S. Dollars ($14,500,000), the

total amount of consumer injury caused by the activities alleged in the Commission's complaint; *provided, however,* that this judgment shall be suspended subject to the conditions set forth in Section III of this Order;

B.    All funds paid pursuant to this Order shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including, but not limited to, consumer redress, and any attendant expenses for the administration of such equitable relief.  Defendants shall cooperate fully to assist the Commission in identifying consumers who may be entitled to redress pursuant to this Order.  If the Commission determines, in its sole discretion, that redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement.  Defendants shall have no right to challenge the Commission's choice of remedies under this Section.  Defendants shall have no right to contest the manner of distribution chosen by the Commission.  This judgment for equitable monetary relief is solely remedial in

nature and is not a fine, penalty, punitive assessment, or forfeiture;

C.   In accordance with 31 U.S.C. § 7701, as amended, Defendants are hereby required, unless they have done so already, to furnish to the Commission their taxpayer identifying number and/or social security number, which shall be used for purposes of collecting and reporting on any delinquent amount arising out of the Defendants' relationship with the government.

D.   Defendants relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law. Defendants shall make no claim to, or demand for return of, the funds, directly or indirectly, through counsel or otherwise.

E.   Defendants agree that the facts as alleged in the Complaint filed in this action shall be taken as true without further proof in any bankruptcy case or subsequent civil litigation pursued by the Commission to enforce its rights to any payment or money judgment pursuant to this Order, including but not limited to a nondischargeability complaint in any bankruptcy case. Defendants further stipulate and agree that the facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and that this Order shall have collateral estoppel effect for

8

such purposes.

F.    Proceedings instituted under this Section are in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law, including any other proceedings the Commission may initiate to enforce this Order.

### III.

### RIGHT TO REOPEN

**IT IS FURTHER ORDERED** that:

A.    By agreeing to this Order, Defendants reaffirm and attest to the truthfulness, accuracy, and completeness of the financial statements signed by Corporate Defendant on October 11, 2009 and by Individual Defendant on May 3, 2010 and provided to the Commission, including all attachments and subsequent amendments and corrections thereto.  Plaintiff's agreement to this Order is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' financial condition, as represented in the financial statement referenced above, which contains material information upon which Plaintiff relied in negotiating and agreeing to the terms of this Order;

B.    If, upon motion of the FTC, the Court finds that Defendants failed to disclose any material asset, materially misrepresented the value of any asset, or made any other material misrepresentation in or omission from his or its financial

9

statement or supporting documents, the suspended judgment entered in Section II.A shall become immediately due and payable. *Provided, however*, that, in all other respects, this Order shall remain in full force and effect, unless otherwise ordered by the Court; and

C.   Any proceedings instituted under this Section shall be in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law, including, but not limited to, contempt proceedings, or any other proceedings that the Commission or the United States might initiate to enforce this Order.  For purposes of this Section, Defendants waive any right to contest any of the allegations in the Commission's Complaint.

### IV.

### PROHIBITIONS REGARDING CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, and employees, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, are hereby permanently restrained and enjoined from:

A.   Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account

10

(including a credit card, bank account, or other financial account), of any person which Defendants obtained prior to entry of this Order in connection with the sale of Kinoki Foot Pads; and

B.     Failing to dispose of such customer information in all forms in their possession, custody, or control within thirty (30) days after entry of this Order.  Disposal shall be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practicably be read or reconstructed.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

### V.

### COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order and investigating the accuracy of Defendants' financial statements upon which the Commission's agreement to this Order is expressly premised:

A.     Within ten (10) days of receipt of written notice from

11

a representative of the Commission, Defendants shall submit
additional written reports, sworn to under penalty of perjury;
produce documents for inspection and copying; appear for
deposition; and/or provide entry during normal business hours to
any business location in each Defendant's possession or direct or
indirect control to inspect the business operation;

      B.    In addition, the Commission is authorized to use all
other lawful means, including, but not limited to:

            1.   Obtaining discovery from any person, without
further leave of court, using the procedures
described in Fed. R. Civ. P. 30, 31, 33, 34, 36,
45, and 69; and

            2.   Having its representatives pose as consumers and
suppliers to Defendants, their employees, or any
other entity managed or controlled in whole or in
part by any Defendant, without the necessity of
identification or prior notice; and

      C.    Defendants each shall permit representatives of the
Commission to interview any employee, employer, consultant,
independent contractor, representative, or agent who has agreed
to such an interview, relating in any way to any conduct subject
to this Order.  The person interviewed may have counsel present.
*Provided*, however, that nothing in this Order shall limit the

Commission's lawful use of compulsory process, pursuant to
Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to
obtain any documentary material, tangible things, testimony, or
information relevant to unfair or deceptive acts or practices in
or affecting commerce (within the meaning of 15 U.S.C.
§ 45(a)(1)).

## VI.

### COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that, in order that compliance with
the provisions of this Order may be monitored:

A.   For a period of three (3) years from the date of entry
of this Order,

1.   Individual Defendant shall notify the Commission
in writing of the following:

a.   Any changes in such Defendant's residence,
mailing addresses, and telephone numbers,
within ten (10) days of such change;

b.   Any changes in such Defendant's employment
status (including self-employment) and any
change in such Defendant's ownership in any
business entity, within ten (10) days of such
change.  Such notice shall include the name
and address of each business that such

13

Defendant is affiliated with, employed by, creates or forms, or performs services for; a detailed description of the nature of the business; and a detailed description of such Defendant's duties and responsibilities in connection with the business or employment; and

c. Any changes in such Defendant's name or use of any aliases or fictitious names within ten (10) days of the date of such change; and

2. Defendants shall notify the Commission in writing of any changes in structure of Corporate Defendant or any business entity that any Defendant directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including, but not limited to: incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; or a change in the business name or address, at least thirty (30) days prior to such

14

change, *provided that*, with respect to any
proposed change in the business entity about which
Defendant learns less than thirty (30) days prior
to the date such action is to take place,
Defendant shall notify the Commission as soon as
is practicable after obtaining such knowledge.

B.   Sixty (60) days after the date of entry of this Order,
and annually thereafter for a period of five (5) years,
Defendants each shall provide a written report to the FTC, which
is true and accurate and sworn to under penalty of perjury,
setting forth in detail the manner and form in which they have
complied and are complying with this Order.   This report shall
include, but not be limited to:

1.   For Individual Defendant:

a.   such Defendant's then-current residence
address, mailing addresses, and telephone
numbers;

b.   such Defendant's then-current employment
status (including self-employment), including
the name, addresses, and telephone numbers of
each business that such Defendant is
affiliated with, employed by, or performs
services for; a detailed description of the

15

nature of the business; and a detailed
description of such Defendant's duties and
responsibilities in connection with the
business or employment; and

c.   Any other changes required to be reported
under Subsection A of this Section;

2.   For all Defendants:

a.   A copy of each acknowledgment of receipt of
this Order, obtained pursuant to the Section
titled "Distribution of Order;" and

b.   Any other changes required to be reported
under Subsection A of this Section.

C.   Each Defendant shall notify the Commission of the
filing of a bankruptcy petition by such Defendant within fifteen
(15) days of filing.

D.   For purposes of this Order, Defendants shall, unless
otherwise directed by the Commission's authorized
representatives, send by overnight courier (not the U.S. Postal
Service) all reports and notifications to the Commission that are
required by this Order to:

Associate Director for Enforcement
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
RE: *FTC v. Xacta 3000, Inc., et al.* (D.N.J),

16

Case No. CV-09-399 (JAP)

*Provided that*, in lieu of overnight courier, Defendants may send such reports or notifications by first-class mail, but only if Defendants contemporaneously send an electronic version of such report or notification to the Commission at DEBrief@ftc.gov.

E.   For purposes of compliance reporting and monitoring required by this Order, the Commission is authorized to communicate directly with each Defendant.

## VII.

## RECORD-KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that, for a period of six (6) years from the date of entry of this Order, Corporate Defendant, and Individual Defendant, for any  business for which he is the majority owner or directly or indirectly controls, are hereby restrained and enjoined from failing to create and retain the following records:

A.   Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.   Personnel records accurately reflecting the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon

17

which the person commenced work; and the date and reason for the
person's termination, if applicable;

    C.    Customer files containing the names, addresses,
telephone numbers, dollar amounts paid, quantity of items or
services purchased, and description of items or services
purchased, to the extent such information is obtained in the
ordinary course of business;

    D.    Complaint and refund requests (whether received
directly, indirectly, or through any third party) and any
responses to those complaints or requests; and

    E.    All records and documents necessary to demonstrate full
compliance with each provision of the Order, including but not
limited to, copies of acknowledgments of receipt of this Order
required by the Sections titled "Distribution of Order" and
"Acknowledgment of Receipt of Order" and all reports submitted to
the FTC pursuant to the Section titled "Compliance Reporting."

**VIII.**

**DISTRIBUTION OF ORDER**

    **IT IS FURTHER ORDERED** that, for a period of three (3) years
from the date of entry of this Order, Defendants shall deliver
copies of the Order as directed below:

    A.    Corporate Defendant: Each Corporate Defendant must
deliver a copy of this Order to (1) all of its principals,

18

officers, directors, and managers; and (2) any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting." For current personnel, delivery shall be within five (5) days of service of this Order upon such Defendant. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

     B.   Individual Defendant as Control Person: For any business that Individual Defendant controls, directly or indirectly, or in which such Defendant has a majority ownership interest, such Defendant shall deliver a copy of this Order to (1) all principals, officers, directors, and managers of that business; and (2) any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting." For current personnel, delivery shall be within five (5) days of service of this Order upon Defendant. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting," delivery shall be at least

19

ten (10) days prior to the change in structure.

   C.   Defendants must secure a signed and dated statement acknowledging receipt of the Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Section.

## IX.

## ACKNOWLEDGMENT OF RECEIPT OF ORDER

   **IT IS FURTHER ORDERED** that Defendants, within five (5) business days of receipt of this Order as entered by the Court, shall submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## X.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

IT IS SO ORDERED.

Dated: _____, 2010

_____
JOEL A. PISANO
UNITED STATES DISTRICT JUDGE

_____
XACTA 3000, Inc.
By: Yehuda Levin

_____
Victor DeFrancis
Federal Trade Commission

_____
YEHUDA LEVIN

_____
Sydney M. Knight
Federal Trade Commission

_____
Lawrence S. Reynolds
Attorney for Xacta 3000, Inc.

ATTORNEYS FOR PLAINTIFF

21

Exhibit B

http://business.ftc.gov/documents/bus35-advertising-faqs-guide-small-business

OTHER ADVERTISING ISSUES

Advertising Agencies

**Are advertising agencies subject to the FTC Act?**

Yes. In addition to the advertiser, the advertising agency also may be held legally responsible for misleading claims in ads. Advertising agencies have a duty to make an independent check on the information used to substantiate ad claims. They may not rely on an advertiser's assurance that the claims are substantiated. In determining whether an ad agency should be held liable, the FTC looks at:

- The extent of the agency's participation in the preparation of the challenged ad; and
- Whether the agency knew or should have known that the ad included false or deceptive claims.

http://www.ftc.gov/speeches/starek/nima96d4.shtml

## MYTH # 8 -- If All You Do Is Produce The Infomercial, You Are Not Responsible For Deceptive Claims

Wrong. This is also known as "The Dog Ate My Homework" myth. The Commission looks to see whether an infomercial producer actively participated in the preparation of the challenged advertisement and whether the producer knew or should have known that the claims were false or unsubstantiated.(5) The extent of participation is important: simply renting space for the taping of an advertiser's script is unlikely to lead to liability. But creating ad copy, developing a media plan, or buying media time could lead to liability when combined with the requisite degree of knowledge.

Furthermore, just calling yourself a "producer" does not remove the possibility that you may be liable as a principal. Your title is not as important as who actually holds the reins. In many cases, the so-called "producer" had authority over the content, format, and editing of the infomercial and also received the lion's share of the revenue.

Let me emphasize that you cannot safely shut your eyes to an obviously deceptive claim. Anyone involved in the preparation and dissemination of an infomercial that contains blatantly misleading claims -- for example, "lose weight without diet, exercise, or surgery" -- risks an FTC inquiry and a potential enforcement action.

How do you minimize these risks? The NIMA Marketing Guidelines are a good starting point. Screen the ads that you are involved with for possibly deceptive claims. Ask for substantiation. If you think that an ad probably makes false or unsubstantiated claims, change the ad to drop those claims. If you cannot change the ad, end your involvement with its creation and dissemination.